UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAYEZ MANSOR, et al., | CASE NO. C23-0347JLR |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants United States Citizenship and Immigration Services ("USCIS"), Secretary of the Department of Homeland Security Alejandro Mayorkas, and USCIS Director Ur Jaddou's (collectively, "Defendants") motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  (MTD (Dkt. # 42); Reply (Dkt. # 47); Supp. Reply (Dkt. # 49).)  Plaintiffs Fayez Mansor, Eclesiaste Coissy, Cabdi Ibrahim Xareed, and Shukria Zafari (collectively, "Plaintiffs") oppose the motion.  (Resp.

1    (Dkt. # 46); Supp. Resp. (Dkt. # 50).)  The court has reviewed the parties' submissions,

2    the balance of the record, and applicable law.  Being fully advised,[1] the court GRANTS

3    in part and DENIES in part Defendants' motion.

4                      **II.**     **BACKGROUND**

5        The court reviews the statutory and regulatory background as well as the factual

6    and procedural background relevant to Defendants' motion.

7    **A.**    **Statutory and Regulatory Background**

8        The Immigration and Nationality Act (the "INA") authorizes the Secretary of

9    Homeland Security to award Temporary Protected Status ("TPS") to noncitizens[2] from

10   countries with certain emergent conditions.  *See* 8 U.S.C. § 1254a(b)(1) (allowing the

11   Secretary to designate for TPS countries where there is an ongoing armed conflict, an

12   environmental disaster, or epidemic).  A noncitizen from a designated country is eligible

13   for TPS if they:  (1) have been "continually present in the United States since the

14   effective date of the most recent designation" of their country of origin; (2) have

15   "continuously resided in the United States" since the designation date; and (3) are

16   "admissible as an immigrant."  *Id.* § 1254a(c)(1)(A)(i)-(iii).  USCIS must deny TPS to

17   certain classes of noncitizens, such as those involved in terrorist activities, convicted of a

18

19       [1] Plaintiffs request oral argument.  (*See* Resp. at 1.)  However, the court has determined

20   oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D.
Wash. LCR 7(b)(4).

21       [2] The TPS statute and its implementing regulations refer to "aliens," *see generally*
8 U.S.C. § 1254a, but the parties generally use the word "noncitizens" to refer to foreign

22   nationals who apply for TPS (*see generally* MTD, Resp.).  The court adopts the parties'
phrasing.

1   felony or at least two misdemeanors in the United States, or "if there are reasonable

2   grounds for regarding the [noncitizen] as a danger to [U.S.] security." *Id*.

3   §§ 1254a(c)(2)(B), 1158(b)(2)(A).

4          TPS temporarily protects noncitizens from deportation or removal from the United

5   States and grants them work authorization. *Id*. § 1254a(a)(1). Specifically, the statute

6   provides that the government "shall authorize the [noncitizen] to engage in employment

7   in the United States and provide the [noncitizen] with an 'employment authorized'

8   endorsement or other appropriate work permit." *Id*. § 1254a(a)(1)(B). The statute further

9   provides that, "[i]n the case of [a noncitizen] who establishes a prima facie case of

10  eligibility for [TPS] benefits . . . until a final determination with respect to the

11  [noncitizen's] eligibility for such benefits . . . has been made, the [noncitizen] shall be

12  provided such benefits." 8 U.S.C. § 1254a(a)(4)(B); *see also* 8 C.F.R. § 244.5(b) ("Upon

13  the filing of an application for [TPS], the [noncitizen] shall be afforded temporary

14  treatment benefits, if the application establishes the [noncitizen's] prima facie eligibility

15  for [TPS]."). The statute's implementing regulations define "prima facie" as "eligibility

16  established with the filing of a completed application for [TPS] containing factual

17  information that if unrebutted will establish a claim for eligibility" under the statute.

18  8 C.F.R. § 244.1. The temporary treatment benefits are protection from deportation and

19  employment authorization. *See* 8 U.S.C. § 1254a(a)(1); 8 C.F.R. § 244.10(e)(1). The

20  regulation further provides that "Temporary treatment benefits shall be evidenced by the

21  issuance of an employment authorization document," and that "temporary treatment

22

1  benefits shall remain in effect until a final decision has been made on the application for

2  [TPS]."  8 C.F.R. § 244.10(e)(1), (2).

3       To apply for TPS, a noncitizen from a country designated for TPS must submit a

4  completed Form I-821 during the designated registration period.  *See generally* USCIS,

5  *Instructions for Application for Temporary Protected Status*,

6  https://www.uscis.gov/sites/default/files/document/forms/i-821instr.pdf, (last accessed

7  Aug. 1, 2023); (*see* Compl. (Dkt. # 1) ¶ 28 (describing this process)).  USCIS then sends

8  a receipt acknowledging the completed application and begins processing it, but under

9  USCIS's current processes, this receipt does not contain an "employment authorized"

10  endorsement.  (*See* Compl. ¶ 52; Maltese Decl. (Dkt. # 4) ¶ 3, Ex. A (the "Mansor

11  Receipt") at 2, *id*. ¶ 4, Ex. B (the "Zafari Receipt") at 2.)  According to Plaintiffs, USCIS

12  guidance "prohibits the presentation of a TPS application receipt notice as evidence of

13  the noncitizen's authorization to work." (Compl. ¶ 54.)  Rather, even noncitizens whose

14  TPS applications have been granted must separately apply for an Employment

15  Authorization Document ("EAD") using Form I-765.  (*Id*.); *see also A.A. v. United States*

16  *Citizenship and Immigration Servs.*, Case No. C15-0813JLR, 2018 WL 1811352, at *1

17  (W.D. Wash. April 17, 2018) (discussing I-765 application).  But USCIS instructs that

18  only TPS holders, and not TPS applicants, may submit a Form I-765.  *See* USCIS,

19  *Temporary Protected Status (TPS) - Questions and Answers*,

20  https://www.uscis.gov/sites/default/files/document/questions-and-answers/Temporary_Pr

21  otected_Status_TPS_Webinar_Questions_and_Answers.pdf (last accessed August 1,

22  2023) at 4 (instructing TPS applicants that the correct eligibility code for an EAD is the

ORDER - 4

1   code for TPS holders, not those whose TPS applications are currently pending).  (*See*

2   Compl. ¶¶ 48-50; *see also* MTD (not refuting this allegation).)

3       On June 9, 2023, USCIS introduced a new program allowing Afghan nationals in

4   the United States to apply for re-parole[3] and, if USCIS accepts the application, renew

5   their work authorization incident to parole.  *See* USCIS, *Applicants for Re-Parole and*

6   *Work Authorization Renewal are Fee-Exempt for Certain Afghan Nationals*,

7   https://www.uscis.gov/newsroom/alerts/applications-for-re-parole-and-work-authorizatio

8   n-renewal-are-fee-exempt-for-certain-afghan (last accessed August 1, 2023).

9   **B.    Factual and Procedural Background**

10      Plaintiffs are noncitizens from countries designated for TPS.  (*See* Compl.

11  ¶¶ 15-18.)  Each of the Plaintiffs has applied for TPS and an EAD, and, with one

12  exception, received receipt notices from USCIS confirming their submission of complete

13  applications.  (*See id.* ¶¶ 15-18, 72-73, 75, 78-79, 81, 83, 85, 87, 91-92, 94.)  Plaintiffs

14  assert that they meet the prima facie eligibility criteria for TPS but, as of the filing of the

15  complaint, had yet to receive temporary employment authorization incident to their TPS

16  applications.  (*See id.* ¶¶ 74, 80, 86, 93.)

17  //

18

19      [3] Certain noncitizens who are otherwise subject to removal may be "paroled," or allowed
    to stay in the United States, while they apply for lawful admission into the United States.  *See,*
20  *e.g.*, *Vazquez Romero v. Garland*, 999 F.3d 656, 660-61 (9th Cir. 2021).  Parole status is often
    time-limited; "re-parole" is the process by which one seeks reissuance of his or her parole.  *See*
21  USCIS, *Applicants for Re-Parole and Work Authorization Renewal are Fee-Exempt for Certain*
    *Afghan Nationals*,
22  https://www.uscis.gov/newsroom/alerts/applications-for-re-parole-and-work-authorization-renew
    al-are-fee-exempt-for-certain-afghan (last accessed August 1, 2023).

1    Afghanistan is currently designated for TPS.  (Compl. ¶¶ 59-60.)  Plaintiff Fayez

2    Mansor is a noncitizen from Afghanistan who applied for TPS on February 21, 2023.  (*Id*.

3    ¶¶ 72-73; Mansor Receipt at 2.)  Mr. Mansor has resided in the United States since he

4    first entered the country with parole and applied for TPS and an EAD on February 21,

5    2023.  (*Id*. ¶¶ 73-74.)  Mr. Mansor has temporary employment authorization through his

6    parole status, which is not associated with his TPS application and is set to expire on

7    October 3, 2023.  (*Id*. ¶ 76.)  Mr. Mansor alleges that losing his work authorization will

8    cause him "significant harm" because he will lose his job and be unable to pay for basic

9    expenses.  (*Id*. ¶ 77.)  Plaintiff Shukria Zafari is a noncitizen from Afghanistan who has

10   resided in the United States since she first entered the country on parole on September 8,

11   2021, after being evacuated from Afghanistan.  (*Id*. ¶ 91, 93.)  Ms. Zafari applied for TPS

12   and employment authorization on January 3, 2023.  (*Id*. ¶¶ 91-92; Zafari Receipt at 2.)

13   Ms. Zafari also has temporary employment authorization through her parole status, which

14   is not associated with her TPS application and will expire in September 2023.  (*Id*. ¶ 95.)

15   Ms. Zafari also alleges she will endure "significant harm" if she loses her employment

16   authorization and will be unable to support herself and two of her three children who live

17   with her in the United States.  (*Id*. ¶ 96.)

18   Somalia is currently designated for TPS.  (*Id*. ¶¶ 59, 65.)  Plaintiff Cabdi Ibrahim

19   Xareed is a noncitizen from Somalia who has resided in the United States since he first

20   entered the country without authorization on September 23, 2022, seeking asylum.  (*Id*.

21   ¶ 83.)  Mr. Xareed is in removal proceedings.  (*Id.* ¶ 84.)  Mr. Xareed applied for TPS

22   and employment authorization on February 23, 2023.  (*Id*. ¶ 85.)  Mr. Xareed has not

1   received receipt notices from USCIS for his applications or temporary employment

2   authorization.  (*Id*. ¶¶ 86-87.)  Mr. Xareed alleges that "[e]mployment authorization is

3   critical" for him because he does not have family in the United States to support him and

4   he needs financial resources to find his wife and daughter in Somalia.  (*Id*. ¶¶ 88-89.)

5        Plaintiff Eclesiaste Coissy, a noncitizen from Haiti, was awarded TPS on March

6   15, 2023 and with it, employment authorization.  (*See* Coissy Approval Not. (Dkt.

7   # 36-2).)

8        Plaintiffs filed this proposed class action on March 15, 2023, on behalf of

9   themselves and all others similarly situated, seeking declaratory and injunctive relief.

10  (*See generally* Compl.)  Plaintiffs assert claims under the Declaratory Judgment Act

11  ("DJA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due

12  Process Clause.  (*See id*. ¶¶ 105-125.)  Plaintiffs simultaneously filed motions for class

13  certification (Mot. for Class Cert. (Dkt. # 2)) and for a preliminary injunction that would

14  require Defendants to issue temporary employment authorization to Plaintiffs (Mot. for

15  Prelim. Injunct. (Dkt. # 3)).[4]  Defendants opposed both motions and filed the instant

16  motion to dismiss.  (*See* Dkt.)  The court ordered supplemental briefing regarding the

17  impact, if any, of USCIS's new initiative waiving fees for Afghan nationals' re-parole

18  and work authorization renewals on Mr. Mansor and Ms. Zafari's standing.  (*See* 6/30/23

19  Min Order (Dkt. # 48); Supp. Resp.; Supp. Reply.)

20  //

21

22  _____
    [4] The court will address these motions in forthcoming orders.

1

### III.   ANALYSIS

2        The court first reviews the standards for granting a motion to dismiss under

3  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) before turning to Defendants'

4  motion.

5  **A.    Legal Standards**

6        Defendants seek dismissal under both Rule 12(b)(1) and Rule 12(b)(6).  (MTD at

7  12-25.)  The court reviews each standard.

8        1.  Rule 12(b)(1)

9        Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of an

10  action for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Subject matter

11  jurisdiction is a threshold issue that goes to the court's power to hear a case.  *Steel Co. v.*

12  *Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  When subject matter jurisdiction

13  is challenged, the party asserting that jurisdiction exists bears the burden of proof.  *Vacek*

14  *v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006); *see also Benitec*

15  *Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) ("The burden is on

16  the party claiming declaratory judgment jurisdiction to establish that such jurisdiction

17  existed at the time the claim for declaratory relief was filed and that it has continued

18  since.").  The court must accept all factual allegations in the complaint as true and draw

19  all reasonable inferences in Plaintiffs' favor.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th

20  Cir. 2013).

21  *//*

22

1    2.  Rule 12(b)(6)

2        Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

3    "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

4    Under this standard, the court construes the claim in the light most favorable to the

5    nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946

6    (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted

7    as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S.

8    662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The

9    court need not accept as true legal conclusions or "formulaic recitation[s] of the legal

10   elements of a cause of action."  *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir.

11   2012).  "A claim has facial plausibility when the plaintiff pleads factual content that

12   allows the court to draw the reasonable inference that the defendant is liable for the

13   misconduct alleged."  *Iqbal*, 556 U.S. at 678.

14   **B.   Whether Mr. Coissy, Mr. Mansor, and Ms. Zafari have Standing**

15       Defendants move to dismiss Mr. Coissy, Mr. Mansor, and Ms. Zafari for lack of

16   subject matter jurisdiction under Rule 12(b)(1) on the basis that these Plaintiffs lack

17   standing.  (MTD at 7-9.)  To establish Article III standing, a plaintiff must show that

18   (1) he or she has suffered an actual or imminent injury in fact, which is concrete and

19   particularized; (2) there is a causal connection between the injury and conduct

20   complained of; and (3) it is likely that a favorable decision in the case will redress the

21   injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  To survive a motion to

22   dismiss, a plaintiff must allege "specific facts plausibly explaining" each of the standing

1   requirements.  *Barnum Timber Co. v. United States Environmental Protection Agency*,

2   633 F.3d 894, 899 (9th Cir. 2011) (noting that *Lujan* was a summary judgment case and

3   the plaintiff's burden is lower at the pleading stage).

4       Defendants argue that the court lacks subject matter jurisdiction over Mr. Coissy,

5   Mr. Mansor, and Ms. Zafari's claims because they have either received TPS or have and

6   may maintain temporary employment authorization incident to their parole status, and

7   therefore lack standing.  (MTD at 7-9; Reply at 7-8 & n.1; Supp. Reply.)  Plaintiffs

8   respond that they all have standing.  (Supp. Resp at 3-5; Resp. at 7.)

9       1.  <u>Whether Mr. Coissy's Claims are Moot.</u>

10      Defendants argue that because USCIS approved Mr. Coissy's TPS application and

11  he now has the employment authorization he seeks, his claims are moot.  (*Id*. at 8 (citing

12  Coissy Approval Not.).)  "[A] case is moot when the issues presented are no longer 'live'

13  or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*,

14  395 U.S. 486, 496 (1969).  "In general, when an administrative agency has performed the

15  action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective

16  relief,' and the claim is moot."  *Rosemere Neighborhood Ass'n v. U.S. Env't Prot.*

17  *Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Pub. Util. Comm'n v. FERC*, 100

18  F.3d 1451, 1458 (9th Cir. 1996)).  A plaintiff who lacks standing may be dismissed.  *See,*

19  *e.g., Coble v. De Rosia*, 823 F. Supp. 2d 1048, 1051 (E.D. Cal. 2011).

20      Plaintiffs argue that following class certification, Mr. Coissy's claims will relate

21  back to the filing of the complaint because the proposed class's claims are inherently

22  transitory and therefore not moot.  (Resp. at 7.)  The court concludes that Mr. Coissy's

1   claims became moot when USCIS granted his TPS application, depriving the court of its

2   ability to grant effective relief. *See id.* Plaintiffs' argument that the "inherently

3   transitory" mootness exception saves Mr. Coissy's claim is inapt, because Defendants do

4   not seek to dismiss the entire action based on the mootness of Mr. Coissy's individual

5   claims. *See, e.g., Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (noting that

6   the court may invoke the relation back doctrine upon class certification "to preserve the

7   merits of the case for judicial resolution.").[5]  Accordingly, the court GRANTS

8   Defendants' motion to dismiss Mr. Coissy and DISMISSES Mr. Coissy from this action.

9        2.   Whether Mr. Mansor and Ms. Zafari have Standing.

10       Defendants argue that Mr. Mansor and Ms. Zafari lack standing because they each

11   have EADs through parole. (*See* MTD at 8.)  Defendants acknowledge that Mr.

12   Mansor's and Ms. Zafari's employment authorizations will expire this fall, but argue

13   (1) their TPS applications will likely be approved before their current EADs expire in

14   October and (2) the new program allowing Afghan nationals in the United States to apply

15   for re-parole makes any potential lapse in employment authorization "conjectural or

16   hypothetical." (*Id.*; Supp. Reply at 4.)  Plaintiffs respond that Mr. Mansor and Ms. Zafari

17   have standing because (1) USCIS's own guidance indicates that it is unlikely to issue Mr.

18   Mansor and Ms. Zafari EADs pursuant to their TPS applications before their current

19   EADs expire and (2) the new re-parole program for Afghan nationals is discretionary,

20

21   _____

22       [5] Nothing in this order precludes the court from determining whether the "inherently
transitory" exception applies at a later date. *See Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir.
2020) (defining "inherently transitory").

1    such that USCIS could deny their applications and allow their employment authorization

2    to lapse.  (Resp. at 6-7 & nn.2 & 3 (citing USCIS websites estimating lengthy processing

3    times for TPS applications and warning applicants that processing times may be longer

4    than estimated); Supp. Resp. at 4; *see also* Supp. Reply at 2 (acknowledging that "the

5    new program is discretionary").)

6           The court concludes that although Mr. Mansor and Ms. Zafari currently have

7    temporary employment authorization, they have plausibly alleged "imminent" injuries,

8    *see Lujan*, 504 U.S. at 560-61, by establishing that their EADs are likely to expire before

9    USCIS adjudicates their TPS applications, (*see* Compl. ¶¶ 76, 95).  The fact that Mr.

10   Mansor's and Ms. Zafari's current employment authorizations have not yet expired is no

11   bar to standing where expiration is imminent.  *See, e.g.*, *Pennsylvania v. West Virginia*,

12   262 U.S. 553, 593 (1923) (explaining that a plaintiff does "not have to await the

13   consummation of threatened injury to obtain preventative relief.  If the injury is certainly

14   impending, that is enough.").  Additionally, the new program for Afghan nationals does

15   not redress Mr. Mansor and Ms. Zafari's harms because, as Defendants acknowledge,

16   USCIS retains discretion with respect to whether to approve re-parole and thus, whether

17   to maintain applicants' employment authorization.  Finally, Mr. Mansor and Ms. Zafari

18   have plausibly alleged that their pending loss of employment authorization is due to

19   USCIS's conduct and would be redressed by a favorable decision here.  *See Lujan*, 504

20   U.S. at 560-61.  Therefore, the court DENIES Defendants' motion with respect to their

21   argument that Mr. Mansor and Ms. Zafari lack standing.

22

1 **C. Whether Plaintiffs' Complaint is Time-Barred**

2   Defendants also assert that dismissal is appropriate because Plaintiffs' claims are

3 barred by the applicable statute of limitations.  (Mot. at 9-11).  "A statute-of-limitations

4 defense, if 'apparent from the face of the complaint,' may properly be raised in a motion

5 to dismiss."  *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251,

6 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119

7 (9th Cir. 1980)).  The APA provides Plaintiffs a six-year limitations period in which to

8 sue federal agencies.  *See* 28 U.S.C. § 2401(a) (providing that, "every civil action

9 commenced against the United States shall be barred unless the complaint is filed within

10 six years after the right of action first accrues")[6]; *Wind River Min. Corp. v. U.S.*, 946 F.2d

11 710, 712 (9th Cir. 1991) (applying § 2401(a)'s statute of limitations to APA claims).

12 Under the APA, the cause of action accrues when the contested final agency action

13 occurs.  *See Wind River*, 946 F.2d at 712.  A policy-based, facial claim contesting the

14 validity of an agency rule or a claim challenging the procedures used in adopting the rule

15 must be brought within six years of the rule's adoption.  *Id*. at 715.  A claim that an

16 agency decision exceeds statutory or constitutional authority "must be brought within six

17 years of the agency's application of the disputed decision to the challenger."  *Id*. at

18 715-16.

19 //

20

21   [6] Section 2401(a) is not jurisdictional.  *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d
765, 770 (9th Cr. 1997).  Accordingly, the court assesses Defendants' statute-of-limitations
argument as a Rule 12(b)(6) motion to dismiss standard, and not as a Rule 12(b)(1) motion to
22 dismiss for lack of subject matter jurisdiction.  *See generally* Fed. R. Civ. P. 12(b).

1    Therefore, the court must determine whether, in challenging Defendants' failure to

2    provide temporary employment authorization when noncitizens file TPS applications that

3    establish prima facie eligibility for TPS, Plaintiffs bring (1) a policy-based, facial

4    challenge to USCIS's[7] adoption of the rule defining "prima facie" eligibility or (2) a

5    claim that USCIS exceeds its statutory authority by withholding temporary employment

6    authorization.  *See id*.[8]  Defendants argue the former, asserting that the complaint is really

7    a facial challenge to the absence of a deadline in the rule for determining TPS applicants'

8    prima facie eligibility.  (*See* MTD at 9-11.)  Defendants note that during rulemaking,

9    USCIS rejected suggestions to include deadlines or provide that the submission of a

10   completed TPS application establishes prima facie eligibility.  (*Id*. at 9-10 (citing

11   Temporary Protected Status, 56 Fed. Reg. 23491, 23492 (May 22, 1991)); Reply at 4-6.)

12   Thus, Defendants argue, the deficiency Plaintiffs identify was evident when USCIS

13   promulgated the regulation in 1991 and should have been challenged within six years of

14   the rule's adoption.  (*See* MTD at 9-10; Reply at 4-5 (quoting *Wind River*, 946 F.2d at

15   715).)  Plaintiffs contend that their cause of action accrued when they submitted

16   completed TPS applications with factual allegations that, if unrebutted, would establish

17   their eligibility for TPS, and did not receive temporary employment authorization.  (Resp.

18   ───────────────

19   [7] The INA first charged Immigration and Nationality Services ("INS") with administering
     TPS, but in 2003, Congress eliminated INS and delegated the administration of TPS to USCIS.
20   (*See* MTD at 1 n.1); 6 U.S.C. § 111.  For simplicity, the court refers to USCIS when discussing
     actions by either INS or USCIS.

21   [8] In the absence of any discussion by the parties, the court assumes without deciding that
     USCIS's failure to issue temporary employment authorization incident to Plaintiffs' TPS
22   applications is a "final agency action" reviewable under the APA.  *See* 5 U.S.C. § 704; *Bennett v.
     Spear*, 520 U.S. 154, 175 (1997); (*see* MTD; Resp.; Reply).

1   at 9-10.)  Plaintiffs argue that they challenge USCIS's application of the rule to them as

2   exceeding agency authority, and not the rule itself.  (*Id.*)

3           The court concludes that Plaintiffs' complaint challenges USCIS's authority to

4   withhold temporary employment authorization once Plaintiffs have established their

5   prima facie eligibility for TPS.  (*See* Compl. ¶¶ 32-56; *see also id*. ¶ 119 ("Defendants

6   have unlawfully withheld employment authorization documentation from Plaintiffs.  The

7   INA and implementing regulations state that Defendants have a mandatory duty to

8   provide Plaintiffs with work authorization, but Defendants do not do so.").)  Without

9   reaching the merits of Plaintiffs' claims, the court concludes that the agency action at

10  issue is USCIS's refusal or failure to issue temporary employment authorization while

11  Plaintiffs' TPS applications are pending.  *See Calif. Sea Urchin Comm'n v. Bean*, 828

12  F.3d 1046, 1049 (9th Cir. 2016) ("Although Plaintiffs cannot now challenge the 1987

13  Final Rule, they can challenge its application in the 2012 program termination as

14  exceeding the agency's statutory authority.").  Therefore, Plaintiffs' claims are timely if

15  they were filed within six years after Plaintiffs established their prima facie eligibility for

16  TPS.  *See Wind River*, 12 F.2d at 715-16.  Plaintiffs filed applications that allegedly

17  established their prima facie eligibility for TPS in January and February 2023 (Compl.

18  ¶¶ 73, 85, 92) and filed this action on March 9, 2023 (*see id*. at 22), well within the

19

20

21

22

1  APA's six-year window, *see* 28 U.S.C. § 2401(a).  Therefore, Plaintiffs' claims are

2  timely.[9]

3    The text of the rule does not support Defendants' argument that Plaintiffs' injuries

4  would have been apparent in 1991, when USCIS adopted the rule.  (*See* MTD at 10-11;

5  Reply at 5.)  Defendants' practice of not issuing a prima facie eligibility determination

6  upon receipt of a completed TPS application that includes facts showing the applicant

7  meets TPS eligibility criteria is not inevitable from the language of the rule itself.  *See* 8

8  C.F.R. § 244.1.  Regardless, "[a] plaintiff cannot be expected to anticipate all possible

9  future challenges to a rule and bring them within six years of the rule's promulgation,

10  before a later agency action applying the earlier rule leads to an injury."  *Calif. Sea*

11  *Urchin*, 838 F.3d at 1049-50.

12    Defendants rely heavily on USCIS's rejection of certain language during the

13  rulemaking process for their position that Plaintiffs' complaint is in fact a facial,

14  policy-based challenge to the regulation.  (*See* MTD at 9-10 ("INS rejected two suggested

15  changes to the definition of prima facie eligibility that would have allowed a TPS

16  applicant to establish prima facie eligibility by filing a completed application." (emphasis

17  omitted)); Reply at 4.)  But Plaintiffs do not challenge USCIS's rejection of any proposed

18  language and argue instead that USCIS violates the regulation itself.  (*See* Compl. ¶ 108

19  ("Federal regulations also mandate that Plaintiffs 'shall be afforded' [TPS] benefits.").)

20

21     [9] In resolving the instant motion to dismiss, the court takes no position on whether the

22  submission of a completed application, without more, establishes the TPS applicant's prima facie
eligibility for TPS.  (*See* Compl. ¶ 37, MTD at 9-10.)

1   Moreover, Defendants cite no authority for the position that merely because an agency

2   declined to write a rule in a way that may have prevented a person's injury, that person

3   may only redress her injury in a facial challenge to the rule.  (*See* MTD; Reply.)  This

4   argument is especially flawed where, as here, a subsequent agency action caused the

5   injury.  *See Calif. Sea Urchin*, 828 F.3d at 1051 (concluding that although the rule itself

6   conferred the authority on which the agency later acted to cause the injury, "it is the

7   recent action, not the earlier rule, that caused Plaintiffs' injury.").[10]  The court declines to

8   reach such a conclusion here and DENIES Defendants' motion to dismiss as time-barred.

9   **D.   Whether Plaintiffs' APA Claims Should be Dismissed**

10          Plaintiffs bring challenges under the APA, arguing USCIS's "policy or practice"

11   of refusing to provide temporary employment authorization upon the filing of a

12   completed TPS application is arbitrary and capricious (Compl. ¶¶ 112-16 (citing 5 U.S.C.

13   § 706(2)(A),(C))), "an agency action unlawfully withheld," (*id*. ¶¶ 118-120 (quoting 5

14   U.S.C. § 706(1))), and procedurally deficient (*id*. ¶¶ 123-24 (quoting 5 U.S.C.

15   § 706(2)(D))).  Defendants' motion to dismiss Plaintiffs' APA claims is predicated

16   entirely on its argument that Plaintiffs bring a facial, policy-based challenge to 8 C.F.R.

17

18          [10] The only case Defendants cite in support of their argument, *Wind River Mining Corp.
     v. U.S.*, does not help them.  (*See* MTD at 9-11; Reply at 4-5 (citing 12 F.2d 710).)  There, Wind

19   River, a mining company, challenged as *ultra vires* the Bureau of Land Management's (BLM)
     designation of certain parcels of land as Wilderness Study Areas (WSAs) where mining activity

20   was prohibited.  *Wind River*, 12 F.2d at 711.  In 1979, BLM designated one such parcel as a
     WSA in which Wind River acquired mining stakes several years later.  *Id*. at 711.  But when

21   Wind River sued in 1989, the Ninth Circuit determined that the final agency action was BLM's
     1987 refusal to invalidate its WSA designation as *ultra vires*.  *Id*. at 715-16 (finding Wind

22   River's complaint timely).  Under Defendants' logic, Wind River's claim was also untimely, but
     the *Wind River* Court concluded the opposite.  *Id*. at 716.

§ 244.1.  (*See* MTD at 18-23 (arguing that the court must defer to USCIS's decisions as reasonable interpretations of an ambiguous statute) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc*., 467 U.S. 837 (1984)).)  But the court has already determined that Defendants mischaracterize Plaintiffs' claims and concludes that Plaintiffs do not challenge USCIS's interpretation of the phrase "prima facie eligibility," or any other regulation subject to *Chevron* deference.  (*See supra* § III.C; *see Chevron*, 467 U.S. at 844 (directing courts to give an agency's interpretation of an ambiguous statute that the agency administers "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").  Because Defendants' arguments are inapplicable to Plaintiffs' claims, the court need not address them and DENIES Defendants' motion to dismiss Plaintiffs' APA claims.

**E.      Whether Plaintiffs Plausibly Allege a Constitutionally Protected Interest**

The Fifth Amendment's Due Process Clause provides that no person shall "be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V. To bring a procedural or substantive due process claim, a plaintiff must carefully describe the asserted right.  *Reno v. Flores*, 507 U.S. 292, 302 (1993).  The Fifth Amendment protects a due process right to a government benefit if the plaintiff has "an entitlement to it," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), but "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion," *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Thus, a plaintiff has "a reasonable expectation of entitlement" protected by substantive due process if the statute conferring the benefit is nondiscretionary and "couch[es the entitlement] in mandatory

1    terms." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

2    "Determinations that require application of law to factual determinations are

3    nondiscretionary." *Hernandez v. Ashcroft*, 345 F.3d 824, 833-34 (9th Cir. 2003) (cleaned

4    up).

5          Plaintiffs allege that the INA guarantees them employment authorization incident

6    to their pending TPS applications; that they therefore have a due process right to the

7    "implementation of a process or procedure to afford them evidence of the employment

8    authorization guaranteed to them by statute and regulation"; and that Defendants have

9    failed to implement such a process.  (Compl. ¶¶ 122-24.)  Defendants assert that Plaintiffs

10   fail to adequately allege any cognizable due process interest in or fundamental right to

11   temporary employment authorization incident to their TPS applications.  (MTD at 17-18.)

12   Defendants argue that Plaintiffs "have not yet established that they are prima facie

13   eligible for TPS," and are therefore not yet guaranteed temporary employment

14   authorization.  (*Id*.)  Defendants argue further that Plaintiffs' interest in employment

15   authorization is not cognizable because USCIS retains discretion with respect to when it

16   must issue a prima facie eligibility decision.  (Reply at 11-12.)

17         The court must therefore determine whether the statutory and regulatory

18   provisions at issue here are sufficiently mandatory to confer an entitlement protected by

19   the Fifth Amendment's Due Process Clause.  *See Wedges/Ledges*, 24 F.3d at 62.  First,

20   Defendants do not argue that TPS eligibility criteria are discretionary (*see generally*

21   MTD; Resp.), and the court independently concludes that they are not, *see* 8 U.S.C.

22   § 1254a(c) (setting forth clear eligibility criteria and specific, mandatory exceptions); (*see*

*also supra* § II.A (discussing the same)).  *See also Ching v. Mayorkas*, 725 F.3d 1149,

1155 (9th Cir. 2013) (finding a property interest in approval of an I-130 visa petition

because approval process requiring application of law to factual determinations was

nondiscretionary).  Second, the TPS statute unambiguously entitles a prima facie eligible

TPS applicant to temporary employment authorization.  *See* 8 U.S.C. § 1254a(a)(4)(B)

("In the case of a[ noncitizen] who establishes a prima facie case of eligibility for [TPS]

benefits . . . , until a final determination with respect to the [noncitizen's] eligibility for

such benefits . . . has been made, the [noncitizen] *shall* be provided such benefits.")

(emphasis added).  Therefore, a prima facie eligible TPS applicant has a property interest

in temporary employment authorization subject to due process protections.

The only remaining question is whether 8 C.F.R. § 244.1 is sufficiently mandatory

to entitle an applicant to a determination of prima facie eligibility, and with it, temporary

employment authorization.  *See Wedges/Ledges*, 24 F.3d at 62.  The court concludes that

it does.  *Ching v. Mayorkas* is instructive:  there, the Ninth Circuit determined that a

provision of the INA setting forth the procedures for approving a I-130 visa petition was

sufficiently "couched in mandatory terms" to confer a property interest.  *Ching*, 725 F.3d

at 1155-56.  The statute at issue provided, in relevant part, "After an investigation into the

facts in each case, . . . the [Secretary] shall, if he determines that the facts stated in the

petition are true . . . approve the petition."  8 U.S.C. § 1154(b).  The *Ching* Court

concluded that because the statute required the application of law to factual

determinations, it was nondiscretionary and therefore conferred a property interest in the

visa.  *Ching*, 725 F.3d at 1155 (quoting *Hernandez*, 345 F.3d at 833-34).  Similarly, 8

1   C.F.R. § 244.1 provides that a TPS applicant is prima facie eligible if the facts in his

2   application are true and establish eligibility for TPS.[11]  *Compare* 8 U.S.C. § 1154(b), *with*

3   8 C.F.R. § 244.1 ("Prima facie means eligibility established with the filing of a completed

4   application for [TPS] containing factual information that if unrebutted will establish a

5   claim of eligibility under [8 U.S.C. § 1254a].").  If the applicant meets these criteria,

6   USCIS must grant temporary employment authorization.  *See* 8 U.S.C. § 1254a(a)(4)(B).

7        Defendants argue that because USCIS retains discretion with respect to when to

8   determine prima facie eligibility, "Plaintiffs lack any present 'legitimate expectation of

9   entitlement' to receiving employment authorization *now*."  (*See* Reply at 12 (quoting

10  *Allen v. Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990)).)  But the question of whether

11  Plaintiffs have already established their eligibility for a mandatory benefit is irrelevant to

12  whether they have a protected property interest in the benefit itself.  *See Roth*, 408 U.S. at

13  577 (noting that Supreme Court had previously determined that welfare recipients had a

14  property interest in continued welfare benefits before they had established eligibility for

15  such benefits) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).  In other words, even if

16  USCIS retains discretion with respect to *when* to issue a prima facie eligibility

17  determination, it does not retain discretion with respect to *whether* to issue such a

18  determination; only the latter is material to whether Plaintiffs have articulated a

19

20  _____

21      [11] The court need not and does not determine which party correctly interprets 8 C.F.R.
    § 244.1.  At the pleading stage, the court determines only that the language of 8 C.F.R. § 244.1
    and 8 U.S.C. § 1254a do not foreclose Plaintiffs' interpretations and attendant theories of
22  liability.  *See, e.g.*, *San Miguel*, 317 F. Supp. 3d at 1087-88 (denying motion to dismiss claim
    based on disputed but plausible interpretation of statute).

1    "cognizable interest" in the benefit.  *See Gonzales*, 545 U.S. at 756.  Thus, because

2    8 C.F.R. § 244.1 restricts USCIS's discretion to reject or deny a prima facie eligibility

3    determination, it confers a property interest subject to procedural due process protections.

4    *See id.*; *Wedges/Ledges*, 24 F.3d at 62.  Accordingly, the court DENIES Defendants'

5    motion to dismiss Plaintiffs' due process claims.

6    **F.      Whether Plaintiffs' Declaratory Judgment Act Claim Should be Dismissed**

7              Under the DJA, a federal court "may declare the rights and other legal relations of

8    any interested party seeking such declaration, whether or not further relief is or could be

9    sought," but only "[i]n a case of actual controversy."  28 U.S.C. § 2201(a).  Declaratory

10   relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and

11   settling the legal relations in issue, and (2) when it will terminate and afford relief from

12   the uncertainty, insecurity, and controversy giving rise to the proceeding."  *See Eureka*

13   *Fed. Sav. and Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 231 (9th Cir.

14   1989).  Plaintiffs ask the court to declare that "8 U.S.C. § 1254a requires Defendants to

15   provide employment authorization documentation while Plaintiffs' applications for TPS

16   are pending."  (Compl. ¶ 107.)

17             Defendants first ask the court to dismiss Plaintiffs' DJA claim because the statute

18   does not confer subject matter jurisdiction on its own, but relies on a predicate cause of

19   action establishing an "independent basis for federal jurisdiction."  (MTD at 18 (quoting

20   *Nationwide Mut. Ins. Co. v. Liberator*, 408 F.3d 1158, 1161 (9th Cir. 2005)).)

21   Defendants rely on their arguments that the court lacks subject matter jurisdiction

22   because the Plaintiffs lack standing or because their claims are time-barred.  (*Id.*)

Because the court has already rejected these arguments (*see supra* § III.B-C; *id*. n.6 (noting § 2401(a) is not jurisdictional)), Defendants' first attack on Plaintiffs' DJA claim fails.

Second, Defendants argue the court should exercise its discretion to dismiss Plaintiffs' DJA claim as duplicative of their APA claims, which, if successful, would offer the same relief.  (MTD at 19 (citing *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) (noting "a claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.")); Reply at 12.)[12]  Plaintiffs counter that any relief they may obtain under the APA would only address Defendants' current policy, whereas a declaratory judgment could affirmatively establish their rights. (Resp. at 19-20 (citing *McGraw-Edison Co. v. Performed Line Prods. Co.*, 362 F.2d 339, 343 (9th Cir. 1966)).  The court concludes that Plaintiffs' DJA claim is not duplicative of their APA claims, because a judgment in their favor could, for example, set aside Defendants' "policy and practice" as *ultra vires* without necessarily clarifying Plaintiffs' affirmative rights under the statute, if any.  Therefore, the court DENIES Defendants' motion to dismiss Plaintiffs' DJA claim.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 42).  The court GRANTS Defendants' motion

---

[12] Defendants also argue that Plaintiffs' APA claims lack merit, and their "duplicative" DJA claim should therefore be dismissed on that basis as well.  (MTD at 18.)  Because the court already rejected Defendants' arguments that Plaintiffs' APA claims lack merit, the court rejects this argument as well.  (*See supra* § III.D.)

1    with respect to their argument that Plaintiff Eclesiaste Coissy lacks standing,

2    DISMISSES Mr. Coissy's claims, and DENIES their motion in all other respects.

3           Dated this 2nd day of August, 2023.

4

5

6                                          JAMES L. ROBART
                                           United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 24