UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAYEZ MANSOR, et al., | CASE NO. C23-0347JLR |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Plaintiffs Fayez Mansor, Cabdi Ibrahim Xareed, and Shukria

Zafari's (collectively, "Plaintiffs") motion for class certification.  (Mot. (Dkt. # 2); Reply

(Dkt. # 38).)  Defendants United States Citizenship and Immigration Services ("USCIS"),

Secretary of the Department of Homeland Security Alejandro Mayorkas, and USCIS

Director Ur Jaddou's (collectively, "Defendants") oppose the motion.  (Resp. (Dkt.

# 36).)  The court has reviewed the parties' submissions, the balance of the record, and applicable law.  Being fully advised,[1] the court GRANTS in part Plaintiffs' motion.

## II.    BACKGROUND

Below, the court reviews the statutory and regulatory as well as factual and procedural backgrounds relevant to Plaintiffs' motion for class certification.

## A.    Statutory and Regulatory Background

The Immigration and Nationality Act (the "INA") authorizes the Secretary of Homeland Security to award Temporary Protected Status ("TPS") to noncitizens[2] from countries with certain emergent conditions.  *See* 8 U.S.C. § 1254a(b)(1) (allowing the Secretary to designate for TPS countries where there is an ongoing armed conflict, an environmental disaster, or epidemic).  A noncitizen from a designated country is eligible for TPS if they:  (1) have been "continually present in the United States since the effective date of the most recent designation" of their country of origin; (2) have "continuously resided in the United States" since the designation date; and (3) are "admissible as an immigrant."  *Id*. § 1254a(c)(1)(A)(i)-(iii).  USCIS must deny TPS to certain classes of noncitizens, such as those involved in terrorist activities, convicted of a felony or at least two misdemeanors in the United States, or "if there are reasonable

---

[1] Plaintiffs request oral argument.  (*See* Mot.)  However, the court has determined oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The TPS statute and its implementing regulations refer to "aliens," *see generally* 8 U.S.C. § 1254a, but the parties generally use the word "noncitizens" to refer to foreign nationals who apply for TPS (*see generally* Mot.; Resp.).  The court adopts the parties' phrasing.

1   grounds for regarding the [noncitizen] as a danger to [U.S.] security." *Id*.

2   §§ 1254a(c)(2)(B), 1158(b)(2)(A).

3          TPS temporarily protects noncitizens from deportation or removal from the United

4   States and grants them work authorization.  *Id*. § 1254a(a)(1).  Specifically, the statute

5   provides that the government "shall authorize the [noncitizen] to engage in employment

6   in the United States and provide the [noncitizen] with an 'employment authorized'

7   endorsement or other appropriate work permit."  *Id*. § 1254a(a)(1)(B).  The statute further

8   provides that, "[i]n the case of [a noncitizen] who establishes a prima facie case of

9   eligibility for [TPS] benefits . . . until a final determination with respect to the

10  [noncitizen's] eligibility for such benefits . . . has been made, the [noncitizen] shall be

11  provided such benefits."  *Id*. § 1254a(a)(4)(B); *see also* 8 C.F.R. § 244.5(b) ("Upon the

12  filing of an application for [TPS], the [noncitizen] shall be afforded temporary treatment

13  benefits, if the application establishes the [noncitizen's] prima facie eligibility for

14  [TPS].").  The statute's implementing regulations define "prima facie" as "eligibility

15  established with the filing of a completed application for [TPS] containing factual

16  information that if unrebutted will establish a claim for eligibility" under the statute.

17  8 C.F.R. § 244.1.  The temporary treatment benefits are protection from deportation and

18  employment authorization.  *See* 8 U.S.C. § 1254a(a)(1); 8 C.F.R. § 244.10(e)(1).  The

19  regulation further provides that "[t]emporary treatment benefits shall be evidenced by the

20  issuance of an employment authorization document" ("EAD") and that "temporary

21  treatment benefits shall remain in effect until a final decision has been made on the

22  application for [TPS]."  8 C.F.R. § 244.10(e)(1), (2).

1         To apply for TPS, a noncitizen from a country designated for TPS must submit a

2    completed Form I-821 ("TPS application") during the designated registration period.  *See*

3    *generally Instructions for Application for Temporary Protected Status*, USCIS,

4    https://www.uscis.gov/sites/default/files/document/forms/i-821instr.pdf (last visited Aug.

5    1, 2023)).  According to USCIS, an electronically filed TPS application is reviewed

6    through an automated "logic system" to ensure the fields are completed.  (Orise Decl.

7    (Dkt. # 37-1) ¶ 6.)  TPS applications submitted by mail are reviewed for completeness by

8    a contractor-operated "USCIS Lockbox."  (*Id.* ¶¶ 7-9.)  According to USCIS, no

9    eligibility determination is made in either of these "completeness" review processes.  (*Id.*

10   ¶¶ 6, 8.[3])  If the TPS application is "complete" and the applicant has either submitted the

11   application fee or a fee waiver, USCIS then sends a receipt notice acknowledging the

12   completed application.  *See* 8 C.F.R. § 103.2(a)(7)(i); (*see* Compl. (Dkt. # 1) ¶ 52;

13   Maltese Decl. (Dkt. # 4) ¶ 3, Ex. A at 2 ("Mansor Receipt"), *id.* ¶ 4, Ex. B at 2 ("Zafari

14   Receipt")).

15        Next, both mailed and electronically filed applications are, if complete, placed in

16   an electronic queue with other TPS applications from the same country for review in the

17   order they were filed.  (Orise Decl. ¶¶ 6-7, 13 & n.4.)  USCIS then schedules a biometric

18   appointment for the applicant.  (*Id.* ¶ 11.)  Finally, after the biometric data is collected

19   and processed, an Immigration Service Officer ("ISO") begins the "initial review" to

20

21       [3] Regulations governing USCIS provide that an application for an immigration benefit is "complete" if it "establish[es] that [the noncitizen] is eligible for the requested benefit at the time of filing the benefit request" and is "properly completed and filed with all initial evidence

22   required" by law and agency instructions.  8 C.F.R. § 103.2(b)(1).

ORDER - 4

determine whether the applicant is eligible.  (*Id*. ¶ 13.)  USCIS acknowledges that "is required to assess TPS eligibility factors in both the prima facie determination and the final adjudication processes."  (*Id*. ¶ 14 (emphasis removed).)  According to USCIS, "to be more efficient, USCIS simultaneously assesses the prima facie determination and approvability during the ISO's initial review of the file."  (*Id*. (describing this as "processing and completing adjudication in one touch").)  USCIS states that if the applicant is prima facie eligible, but the ISO cannot approve the TPS application, the ISO will issue a prima facie eligibility determination and either request additional evidence or issue a Notice of Intent to Deny the TPS application.  (*Id*. ¶¶ 14-15.)  If, on the other hand, the ISO can approve the TPS application at this stage, it will do so without having ever issued temporary treatment benefits.  (*Id*. ¶ 14.)

Under USCIS's current processes, the TPS application receipt does not contain an "employment authorized" endorsement, and TPS applicants must separately apply for an EAD using Form I-765.  (Compl. ¶ 28); *see also A.A. v. U.S. Citizenship & Immigr. Servs.*, Case No. C15-0813JLR, 2018 WL 1811352, at *1 (W.D. Wash. April 17, 2018) (discussing the Form I-765 application).[4]

//

//

---

[4] The parties dispute whether TPS applicants—as opposed to those whose TPS applications have been granted—may file a Form I-765.  (*See, e.g.*, Compl. ¶¶ 48-50; Corral Decl. (Dkt. # 12) ¶ 5 (Form I-765 applicants "are not permitted to select . . . the category for TPS *applicants*"); *but see* Orise Decl. ¶¶ 18-22 & n.10, Ex. A (screenshot of application for Form I-765 indicating a TPS holder or a TPS applicant may submit the form).)  The court need not resolve this dispute on the instant motion.

1    **B.      Factual Background**

2           Plaintiffs are noncitizens from countries designated for TPS.  (*See* Compl.

3    ¶¶ 15-18.)  Each of the Plaintiffs has applied for TPS and employment authorization and,

4    with one exception, received receipt notices from USCIS confirming their submission of

5    complete applications.  (*See id.* ¶¶ 15-18, 72-73, 75, 78-79, 81, 83, 85, 87, 91-92, 94.)

6    Plaintiffs assert that they meet the prima facie eligibility criteria for TPS but, as of the

7    filing of the complaint,[5] had yet to receive temporary employment authorization incident

8    to their TPS applications.  (*See id.* ¶¶ 74, 80, 86, 93.)

9           Afghanistan is currently designated for TPS.  (*Id.* ¶¶ 59-60.)  Plaintiff Fayez

10   Mansor is a noncitizen from Afghanistan who applied for TPS on February 21, 2023.  (*Id.*

11   ¶¶ 72-73; Mansor Receipt.)  Mr. Mansor has resided in the United States since he first

12   entered the country with parole and applied for TPS and employment authorization on

13   February 21, 2023.  (*Id.* ¶¶ 73-74.)  Mr. Mansor has temporary employment authorization

14   through his parole status, which is not associated with his TPS application and is set to

15   expire on October 3, 2023.  (*Id.* ¶ 76.)  Mr. Mansor alleges that losing his work

16   authorization will cause him "significant harm" because he will lose his job and be

17   unable to pay for basic expenses.  (*Id.* ¶ 77.)  Plaintiff Shukria Zafari is a noncitizen from

18   Afghanistan who has resided in the United States since she first entered the country on

19   parole on September 8, 2021, after being evacuated from Afghanistan.  (*Id.* ¶¶ 91, 93.)

20   Ms. Zafari applied for TPS and employment authorization on January 3, 2023.  (*Id.*

21

22           [5] For the reasons articulated below (*see infra* § III.A), the court reviews the facts as they were at the time the complaint was filed.

¶¶ 91-92; Zafari Receipt.)  Ms. Zafari also has temporary employment authorization through her parole status, which is not associated with her TPS application and will expire in September 2023.  (*Id.* ¶ 95.)  Ms. Zafari also alleges she will endure "significant harm" if she loses her employment authorization and will be unable to support herself and two of her three children who live with her in the United States.  (*Id.* ¶ 96.)

Somalia is currently designated for TPS.  (*Id.* ¶¶ 59, 65.)  Plaintiff Cabdi Ibrahim Xareed is a noncitizen from Somalia who has resided in the United States since he first entered the country without authorization on September 23, 2022, seeking asylum.  (*Id.* ¶ 83.)  Mr. Xareed is in removal proceedings.  (*Id.* ¶ 84.)  Mr. Xareed applied for TPS and employment authorization on February 23, 2023.  (*Id.* ¶ 85.)  Mr. Xareed has not received receipt notices from USCIS for his applications or temporary employment authorization.  (*Id.* ¶¶ 86-87.)  Mr. Xareed alleges that "[e]mployment authorization is critical" for him because he does not have family in the United States to support him and he needs financial resources to find his wife and daughter in Somalia.  (*Id.* ¶¶ 88-89.)

**C.   Procedural Background**

Plaintiffs filed this proposed class action, asserting claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, and the Fifth Amendment's Due Process Clause, U.S. Const. amend. V.  (*See* Compl. ¶¶ 105-25.)  On August 2, 2023, the court denied Defendants' motion to dismiss, except with respect to its motion to dismiss Plaintiff Eclesiaste Coissy, whose claim had become moot.  (*See* MTD (Dkt. # 42); 8/2/23 Order (Dkt. # 51).)  In relevant part, the court rejected Defendants' arguments that TPS applicants who receive EADs via other

1    avenues lack standing to challenge Defendants' alleged failure to issue EADs incident to

2    their prima facie eligibility for TPS.  (*See id*. at 11-12.)  On August 14, 2023, Defendants

3    notified the court that Plaintiffs had each received EADs incident to their applications for

4    TPS.  (Not. (Dkt. # 54).)  The court ordered briefing from the parties on the impact of this

5    development, if any, on the instant motion and this litigation in general.  (8/14/23 OSC

6    (Dkt. # 56).)  Both parties timely responded to the order.  (*See* Pls' OSC Resp. (Dkt.

7    # 57); Defs' OSC Resp. (Dkt. # 58); *see also infra* § III.A (addressing possible

8    mootness).)

9            Plaintiffs now ask the court to certify the following class:

10           All individuals who have submitted or will submit an initial application for
             Temporary Protected Status (TPS), who have received or will receive a
11           notice of receipt for such an application, who have not received a final
             decision on the TPS application, and who have not been issued employment
12           authorization documentation incident to their pending TPS application.

13   (Mot. at 2.)  In the alternative, Plaintiffs propose modifying the class definition as

14   follows:

15           All individuals who have submitted or will submit an initial application
             establishing prima facie eligibility for Temporary Protected Status (TPS),
16           who have not received a final decision on the TPS application, and who have
             not been issued employment authorization documentation incident to their
17           pending TPS application.

18   (Reply at 7.)  Plaintiffs' modified class definition is very similar to the class definition

19   that Defendants argue the court would have to adopt to narrow an otherwise

20   impermissibly broad class definition.  (*Compare id*., *with* Resp. at 10.)  The court

21   evaluates Plaintiffs' motion using this second, modified class definition.  *See* 7A Charles

22   Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1759 (4th ed. 2023)

1  (noting the court's authority to "construe the complaint or redefine the class to bring it

2  within the scope of Rule 23"); *see also Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483

3  (N.D. Cal. 2011) (narrowing overbroad class definition).

### III.   ANALYSIS

5  The court begins by discussing the impact of Plaintiffs' receipt of temporary

6  employment authorization on the instant motion, before reviewing the standard for

7  granting a motion for class certification, and finally turning to Plaintiffs' motion and

8  Defendants' arguments in opposition.

### A.   Whether the Class Certification Motion is Moot

10  A named plaintiff with a mooted claim generally cannot represent a class unless

11  they were a "member of the class at the time the class was certified." *Kuahulu v. Emps.*

12  *Ins. of Wausau*, 557 F.2d 1334, 1336 (9th Cir. 1977); *see also Rosemere Neighborhood*

13  *Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("In general, when

14  an administrative agency has performed the action sought by a plaintiff in litigation, a

15  federal court lacks the ability to grant effective relief, and the claim is moot." (internal

16  quotation marks omitted)).  However, when a proposed class asserts "inherently

17  transitory" claims, "mooting the putative class representative's claims will not

18  necessarily moot the class action," even prior to class certification. *Pitts v. Terrible*

19  *Herbst, Inc.*, 653 F.3d 1080, 1090 (9th Cir. 2011); *see also Cnty. of Riverside v.*

20  *McLaughlin*, 500 U.S. 44, 52 (1991) ("That the class was not certified until after the

21  named plaintiffs' claims had become moot does not deprive us of jurisdiction.").

22

1    A claim is inherently transitory and therefore subject to the "capable of repetition

2    yet evading review" exception to mootness if:  (1) "the duration of the challenged action

3    is 'too short' to allow full litigation before it ceases," *Johnson v. Rancho Santiago Cmty.*

4    *Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010); and (2) "it is certain that other persons

5    similarly situated will have the same complaint," *Pitts*, 653 F.3d at 1089-90 (internal

6    quotation marks omitted).  A challenged action that lasts up to three years may be "too

7    short" and therefore inherently transitory, *Johnson*, 623 F.3d at 1019, and the

8    "evading-review doctrine" applies "where the duration of the controversy is solely within

9    the control of the defendant," *Anderson v. Evans*, 371 F.3d 475, 479 (9th Cir. 2004).  If a

10   proposed class's claims are inherently transitory, the court may invoke the "relation

11   back" doctrine upon class certification and review the facts as they were at the time the

12   complaint was filed, "to preserve the merits of the case for judicial resolution."

13   *McLaughlin*, 500 U.S. at 52.

14   Here, each of the Plaintiffs have received temporary employment authorization

15   incident to their TPS applications, which is the relief they ultimately request.  (8/2/23

16   Order at 10-11; Not. at 2; *see, e.g.*, Compl. at 22); *see Rosemere*, 581 F.3d at 1173.  But

17   Plaintiffs' claim that USCIS violates the law by not issuing temporary employment

18   authorization immediately upon receipt of a completed TPS application is inherently

19   transitory.  *See Pitts*, 653 F.3d at 1089-90.  First, the duration of the challenged action is

20   "too short" because processing times for TPS applications are measured in months, and

21   because "the duration of the controversy is solely within the control of the defendant."

22   *Anderson*, 371 F.3d at 479; (*see* Orise Decl. ¶ 16 (listing current processing times for

1    TPS applications, ranging between 3.5 and 21.5 months)).  Second, other TPS applicants

2    will certainly have the same complaint, because Defendants will continue their practice

3    of not issuing temporary employment authorization immediately upon receipt of TPS

4    applications.  *See Pitts*, 653 F.3d at 1089-90; *Casa Libre/Freedom House v. Mayorkas*,

5    Case No. 2:22-cv-01510-ODW (JPRx) 2023 WL 3649589, at *7 (C.D. Cal. May 25,

6    2023) (concluding claims of Special Immigrant Juvenile petitioners who challenged

7    USCIS's delay in processing their applications were inherently transitory); (*see generally*

8    Orise Decl. (describing how USCIS processes TPS applications)).  Thus, Plaintiffs'

9    claims relate back to the filing of the complaint.  *See McLaughlin*, 500 U.S. at 52.

10   **B.    Legal Standard for Class Certification**

11       Class certification is governed by Federal Rule of Civil Procedure 23.  *Wal-Mart*

12   *Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party seeking

13   certification must first demonstrate that "(1) the class is so numerous that joinder of all

14   members is impracticable; (2) there are questions of law or fact common to the class;

15   (3) the claims or defenses of the representative parties are typical of the claims or

16   defenses of the class; and (4) the representative parties will fairly and adequately protect

17   the interests of the class.  Fed. R. Civ. P. 23(a).  "Second, the proposed class must satisfy

18   at least one of the three requirements listed in Rule 23(b)."  *Dukes*, 564 U.S. at 345;

19   *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Here, Plaintiffs seek to

20   certify a class under Rule 23(b)(2), which requires that "the party opposing the class has

21   acted or refused to act on grounds that apply generally to the class, so that final injunctive

22   relief or corresponding declaratory relief is appropriate respecting the class as a whole."

1   Fed. R. Civ. P. 23(b)(2); (*see* Mot. at 2).  "Rule 23(b)(2) applies only when a single

2   injunction or declaratory judgment would provide relief to each member of the class."

3   *Dukes*, 564 U.S. at 360.

4         Rule 23 "does not set forth a mere pleading standard."  *Id*. at 350.  Rather,

5   "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the

6   prerequisites of Rule 23(a) have been satisfied."  *Id*. at 350-51 (internal quotation marks

7   omitted).  "[I]t may be necessary for the court to probe behind the pleadings before

8   coming to rest on the certification question."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

9   147, 160 (1982).  This is because "the class determination generally involves

10   considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

11   cause of action."  *Id*. (internal quotation marks omitted).  Nonetheless, a decision on the

12   merits is improper at the class certification stage.  *Moore v. Hughes Helicopters, Inc.*, 708

13   F.2d 475, 480 (9th Cir. 1983); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78

14   (1974).  The decision regarding class certification "involve[s] a significant element of

15   discretion."  *Yokoyama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1090 (9th Cir.

16   2010).

17   **C.    Plaintiffs' Motion for Class Certification**

18         The court reviews Plaintiffs' motion with respect to each of the relevant Rule 23

19   factors before turning to Defendants' arguments in opposition.  Defendants do not

20

21

22

1   challenge Plaintiffs' proposed class under any of the 23(a) or 23(b) factors, but instead

2   argue that the proposed class is an impermissible fail-safe class.  (Resp. at 10-12.[6])

3       1.  <u>Numerosity</u>

4       "The prerequisite of numerosity is discharged if 'the class is so large that joinder

5   of all members is impracticable.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

6   Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Defendants do not contest Plaintiffs'

7   numerosity allegations.  (*See* Resp.)  Here, the court concludes that Plaintiffs have

8   established their proposed class is so numerous that joinder is impracticable, in

9   satisfaction of Rule 23(a)(1)'s requirement.  (*See* Mot. at 11 (estimating more than

10  100,000 proposed class members).)

11      2.  <u>Commonality</u>

12      The requirement of "commonality" is met through the existence of a "common

13  contention" that is of "such a nature that it is capable of classwide resolution."  *Dukes*,

14  564 U.S. at 350.  A contention is capable of classwide resolution if "the determination of

15

16      [6] Defendants also argue that the Plaintiffs' original class definition is overbroad because it includes TPS applicants who have suffered no harm because they either already received EADs through another avenue, or are not prima facie eligible for TPS.  (*See* Resp. at 7-10.)  The court need not address Defendants' first argument, having rejected a similar argument in denying Defendants motion to dismiss.  (*See* 8/2/23 Order at 10-11.)  Defendants argue that, "[t]o resolve the overbreadth issues . . . the [c]ourt would need to narrow the proposed class to:

19      All individuals who have submitted or will submit an initial application for [TPS] *who are prima facia eligible for TPS*, who have not received a final decision on the TPS application and who have not been issued employment authorization documentation."

21  (Resp. at 10 (emphasis in original); *see supra* § II.C (discussing narrower class definition in light of Defendants' arguments and Plaintiffs' reply).)  Defendants argue that this narrowed definition creates a fail-safe class.  (Resp. at 10-12; *see also infra* § III.C.6 (addressing this argument).)

1    its truth or falsity will resolve an issue that is central to the validity of each one of the

2    claims in one stroke." *Id*.  Accordingly, "what matters to class certification . . . is not the

3    raising of common questions—even in droves—but, rather the capacity of a classwide

4    proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

5    This requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019.  Accordingly,

6    "[a]ll questions of fact and law need not be common to satisfy the rule." *Id*.; *Evon v. Law*

7    *Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the

8    circumstances of each particular class member vary but retain a common core of factual

9    or legal issues with the rest of the class, commonality exists.").  This standard is "readily

10   met" where plaintiffs seek prospective relief "challeng[ing] a system-wide practice or

11   policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849,

12   868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499,

13   504-05 (2005); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("What makes the

14   plaintiffs' claims suitable for a class action is the common allegation that the [agency's]

15   procedures [are] insufficient.").

16         Here, Plaintiffs' proposed class meets the Ninth Circuit's permissive commonality

17   standard because the class poses a common contention:  namely, that USCIS's practice of

18   not issuing temporary employment authorization upon receipt of a complete TPS

19   application that establishes prima facie eligibility violates the TPS statute. *See Dukes*,

20   564 U.S. at 350; (Reply at 7).  Thus, the class's common contention is capable of

21   classwide resolution because Plaintiffs challenge "a system-wide practice or policy that

22   affects all of the putative class members." *Armstrong*, 275 F.3d at 868; *see also Nw.*

ORDER - 14

1   *Immigrant Rights Project v. U.S. Citizenship & Immigr. Servs.*, 325 F.R.D. 671, 693

2   (W.D. Wash. 2016) (finding sufficient commonality where the litigation would be

3   resolved by answering whether USCIS is legally obligated to adjudicate EAD

4   applications within a certain timeframe).  If Plaintiffs are correct on the merits, USCIS

5   can address all proposed class members' injuries by changing its practice "in one stroke."

6   *Dukes*, 564 U.S. at 350.

7          Defendants' argument to the contrary is unpersuasive.  Defendants assert that the

8   proposed class cannot satisfy the commonality requirement because resolution of the

9   common legal question depends on an individualized assessment of a person's prima

10  facie eligibility for TPS.  (*See* Resp. at 11.)  Defendants' argument appears to conflate

11  Rule 23(a)(2)'s requirement that the class suffered a common injury capable of classwide

12  resolution, *see Dukes*, 564 U.S. at 350, with Rule 23's implied "ascertainability"

13  requirement that class members can be readily identified using clear and objective, rather

14  than subjective criteria, *see Xavier v. Phillip Morris USA, Inc.*, 787 F. Supp. 2d 1075,

15  1089 (N.D. Cal. 2011).[7]  But courts within the Ninth Circuit have concluded that the

16  implied ascertainability requirement does not apply to Rule 23(b)(2) classes.  *See, e.g.*, *In*

17  *re Yahoo Mail Litig.*, 308 F.R.D. 577, 596-98 (N.D. Cal. 2015); *Campbell v. Facebook,*

18  *Inc.*, 315 F.R.D. 250, 259 (C.D. Cal. 2016); *Al Otro Lado, Inc. v. McAleenan*, 423 F.

19

20

21          [7] To the extent Defendants conflate the commonality requirement with Rule 23(b)(3)'s
more burdensome requirement that common questions predominate over individualized issues,
this too fails because, "[a]lthough common issues must predominate for class certification under

22  Rule 23(b)(3), no such requirement exists under 23(b)(2)."  *Walters*, 145 F.3d at 1047.

1   Supp. 3d 848, 872-73 (S.D. Cal. 2019) (collecting cases).[8]  Defendants cite no authority

2   that subsumes this inquiry into the commonality analysis.  (*See* Resp.)  Regardless, the

3   Ninth Circuit has concluded that Rule 23 does not require an "administratively feasible"

4   way to identify class members.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133

5   (9th Cir. 2017).  And courts often certify classes whose membership requires some

6   inquiry—and even a legal determination—to ascertain.  *See, e.g.*, *Vizcaino v. U.S. Dist.*

7   *Court*, 173 F.3d 713, 721-22 (9th Cir. 1999) (upholding certification of class of "common

8   law employees" where plaintiffs' legal claims required determination of whether they

9   were common law employees); *Vaszlavik v. Storage Tech. Corp.*, 183 F.R.D. 264, 271

10  (D. Colo. 1998) (finding commonality and typicality requirements satisfied in proposed

11  class of employees whom defendant allegedly perceived to have over-used benefits);

12  *Johnson v. Jessup*, 381 F. Supp. 3d 619, 634-35 (M.D. N.C. 2019) (proposed class of

13  drivers licensees alleging state's revocation of their licenses due to failure to pay court

14  fines without first assessing inability to pay violated due process rights satisfied

15  commonality and typicality requirements; common question was whether state provided

16  adequate procedures, not whether given class member could show inability to pay).

17

18  _____

19      [8] Even if Plaintiffs must establish the class's ascertainability, the court concludes that
    class members can be identified using the clear, objective criteria for prima facie eligibility
    defined by the TPS statute and implementing regulations.  *See Xavier*, 787 F. Supp. 2d at 1089;
20  (*supra* § II.A (describing criteria)); *compare Civ. Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
    317 F.R.D. 91, 104-05 (N.D. Cal. 2016) (finding proposed class of wheelchair uses denied full
21  enjoyment of facilities sufficiently ascertainable), *with C.F. v. Lashway*, Case No.
    C16-1205RSM, 2017 WL 2574010, at *4 (W.D. Wash. June 14, 2017) (proposed class of
22  Medicaid recipients with disabilities who needed institutional care and desired community-based
    services was not ascertainable because it relied on subjective criteria).

1     Here, the common legal question is whether Defendants' practice violates the TPS

2     statute and its implementing regulations.  If Plaintiffs ultimately obtain a judgment,[9]

3     Defendants need only change their uniform procedures for reviewing TPS applications

4     and assessing prima facie eligibility.  *See Dukes*, 564 U.S. at 350 (noting that

5     commonality is satisfied where the class's claims can all be resolved "in one stroke").  In

6     this Rule 23(b)(2) class, no "individualized" inquiries into proposed class members'

7     eligibility for relief would be necessary.  (*See* Resp.; *infra* § III.C.5 (discussing Rule

8     23(b)(2)).)  Therefore, because Plaintiffs challenge "a system-wide practice or policy that

9     affects all of the putative class members," *Armstrong*, 275 F.3d at 868, the proposed class

10    meets Rule 23(a)(2)'s commonality requirement.

11        3.  Typicality

12        "[R]epresentative claims are 'typical' if they are reasonably co-extensive with

13    those of absent class members; they need not be substantially identical."  *Hanlon*, 150

14    F.3d at 1020.  "Typicality refers to the nature of the claim or defense of the class

15    representative, and not to the specific facts from which it arose or the relief sought."

16    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Nonetheless, the

17    "commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457

18    U.S. at 157 n.13.  "Both serve as guideposts for determining whether under the particular

19    circumstances maintenance of a class action is economical and whether the named

20    plaintiff's claim and the class claims are so interrelated that the interests of the class

21

22        [9] Importantly, the court takes no position on the merits of Plaintiffs' claims at this time.
*See Moore*, 708 F.2d at 480; *Eisen*, 417 U.S. at 177-78.

1    members will be fairly and adequately protected in their absence." *Id.* In determining

2    typicality, courts consider "whether other members have the same or similar injury,

3    whether the action is based on conduct which is not unique to the named plaintiffs, and

4    whether other class members have been injured by the same course of conduct." *Hanon*,

5    976 F.2d at 508. Typicality is a "permissive standard," *Staton v. Boeing Co.*, 327 F.3d

6    938, 957 (9th Cir. 2003) (cleaned up), but class certification is inappropriate "if there is a

7    danger that absent class members will suffer if their representative is preoccupied with

8    defenses unique to it," *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

9           Here, as of the filing of the complaint, each of the Plaintiffs plausibly alleged that

10   they had suffered the same injury as that suffered by the proposed class; namely, they had

11   submitted complete TPS applications allegedly establishing their prima facie eligibility

12   but had not yet received temporary employment authorization incident to their TPS

13   applications. (*See* Compl. ¶¶ 72-77; 83-96); *Hanon*, 976 F.2d at 508; *see also*

14   *McLaughlin*, 500 U.S. at 52 (discussing inherently transitory claims). The proposed class

15   has allegedly suffered, or will suffer, the same harm as a result of Defendants' common

16   practice. (*See* Reply at 7); *Hanon*, 976 F.2d at 508. Defendants' argument that the class

17   fails to satisfy typicality is the same as their argument regarding commonality; that class

18   membership is predicated on individualized inquires into each member's prima facie

19   eligibility. (*See* Resp. at 11.) Defendants again miss the mark for the reasons articulated

20   above. (*See supra* § III.C.2 (rejecting Defendants' argument)); *see Falcon*, 457 U.S. at

21   157 n.13 (noting that the commonality and typicality requirements tend to merge).

22   Defendants' argument also fails because whether Plaintiffs have established prima facie

1   eligibility—and are therefore members of the proposed class—refers to the facts from

2   which their alleged injury arose, which is irrelevant to the typicality analysis. *Hanon*,

3   976 F.2d at 508 ("Typicality refers to the nature of the claim or defense of the class

4   representative, and not to the specific facts from which it arose."). Defendants do not

5   argue that Plaintiffs' claims are vulnerable to unique defenses, *see id.*, or challenge

6   typicality on any other recognized grounds. (*See* Resp.) Accordingly, because Plaintiffs

7   allege claims that are co-extensive with those of the absent class members, they satisfy

8   Rule 23(a)(3)'s typicality requirement. *See Hanlon*, 150 F.3d at 1020.

9        4.   Adequacy of Representation

10       "The final hurdle interposed by Rule 23(a) is that 'the representative parties will

11  fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020

12  (quoting Fed. R. Civ. P. 23(a)(4)); *see also* Fed. R. Civ. P. 23(g) (setting forth factors for

13  appointing class counsel). "Resolution of two questions determines legal adequacy:

14  (1) do the named plaintiffs and their counsel have any conflicts of interest with other

15  class members and (2) will the named plaintiffs and their counsel prosecute the action

16  vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight

17  Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

18       Plaintiffs assert that they are adequate representatives of the class because they do

19  not seek money damages for themselves and, as of the filing of the complaint, share the

20  same interests as absent class members. (Mot. at 17); *see also Doe v. Wolf*, 424 F. Supp.

21  3d 1028, 1043-44 (S.D. Cal. 2020) (rejecting argument that named plaintiffs, whose

22  claims were moot, would not adequately represent the class where inherently transitory

ORDER - 19

1    exception too mootness applied); *Padilla v. U.S. Customs & Immigr. Enf't*,

2    C18-0928MJP, 2019 WL 1056466, at *4 (W.D. Wash. Mar. 6, 2019) (same).  Counsel

3    for Plaintiffs demonstrate that they have experience litigating class actions on

4    immigration matters, including nationwide class actions.  (*See* Mot. at 17; Adams Decl.

5    (Dkt. # 5) ¶¶ 3-4, 6-7; Kenney Decl. (Dkt. # 6) ¶¶ 4-6; Realmuto Decl. (Dkt. # 7) ¶¶ 4-5,

6    10.)  The court finds nothing in the record that would indicate that either the Plaintiffs or

7    their attorneys have any conflicts of interest with other class members.  Defendants do

8    not challenge Plaintiffs' or their counsel's abilities to protect the class's interests.  (*See*

9    Resp.)  Accordingly, the court concludes that Plaintiffs and their counsel meet Rule

10   23(a)(4)'s adequacy requirement.  *See Hanlon*, 150 F.3d at 1020.

11        5.  Common Grounds

12        Class certification under Rule 23(b)(2) is only appropriate where the plaintiffs

13   allege that the defendant has "acted or refused to act on grounds that apply generally to

14   the class, so that final injunctive relief or corresponding declaratory relief is appropriate

15   respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Class certification under

16   Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or

17   injunctive."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).  In a

18   23(b)(2) class, the court treats "[p]redominance and superiority a[s] self-evident," *Dukes*,

19   564 U.S. at 363, and requires "[o]nly a showing of cohesiveness of class claims,"

20   *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (citing *Fosmire v.*

21   *Progressive Max Ins. Co.*, 277 F.R.D. 625, 635 (W.D. Wash. 2011)).  This inquiry "does

22   not require an examination of the viability or bases of the class members' claims for

1   relief, does not require that the issues common the class satisfy a Rule 23(b)(3)-like

2   predominance test, and does not require a finding that all members of the class have

3   suffered identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

4       Here, the only relief Plaintiffs seek is declaratory and injunctive.  (*See* Compl. at

5   18-22.)  Plaintiffs seek a declaration that (1) the TPS statute requires Defendants to

6   provide employment authorization documentation while Plaintiffs' TPS applications are

7   pending, and (2) Defendants' alleged failure to implement a process to afford Plaintiffs

8   evidence of employment authorization while their TPS applications are pending violates

9   their due process rights.  (*Id*. ¶¶ 106-110, 122-25.)  Plaintiffs also seek an injunction

10  (1) setting aside Defendants' allegedly unlawful practice and (2) compelling Defendants

11  to provide temporary employment authorization to the class.  (*Id*. ¶¶ 112-16, 118-20.)

12  Without evaluating any of these claims on the merits, the court concludes the claims are

13  sufficiently cohesive for treatment in a Rule 23(b)(2) class.  *See Fosmire*, 277 F.R.D. at

14  625; *see also Dukes*, 564 U.S. at 360 (stating that Rule 23(b)(2) authorizes class

15  certification "when a single inunction or declaratory judgment would provide relief to

16  each member of the class").

17      Defendants' arguments to the contrary are again unpersuasive.  Defendants argue

18  that because "prima facie eligibility . . . cannot be assessed on a class-wide basis," it is

19  "impossible for USCIS's conduct to be 'declared unlawful only as to all of the class

20  members or as to none.'"  (Resp. at 12 (quoting *Dukes*, 564 U.S. at 360).)  But, for the

21  reasons articulated above (*see supra* § III.C.2-.3), this is not so.  The modified class

22  definition includes only those who "who have submitted or will submit an initial

1    application establishing prima facie eligibility for" TPS and have not received EADs

2    incident to their pending TPS applications.  (*See supra* § II.C.)  Plaintiffs contend—but

3    the court has not yet had occasion to rule—that USCIS's failure to issue these EADs

4    violates the TPS statute.  (*See, e.g.*, Mot. at 1-2.)  Thus, when the court reaches the merits

5    of Plaintiffs' case, its task will be to determine whether USCIS's conduct is unlawful as

6    to all of the class members; no individualized assessment will be necessary.  *See Dukes*,

7    564 U.S. at 360.  Accordingly, the court concludes that class certification under Rule

8    23(b)(2) is appropriate.

9         6.  Fail-Safe Class

10        Defendants' primary argument against certifying this class is that it will create an

11   impermissible fail-safe class, or one "that is defined to include only those individuals

12   who were injured by the allegedly unlawful conduct."  *Olean Wholesale Grocery Coop.,*

13   *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir.), *cert. denied sub nom.*

14   *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others*

15   *Similarly Situated*, --U.S.--, 143 S. Ct. 424 (2022); (Resp. at 10-12).[10]  A fail-safe class is

16   "defined in a way that precludes membership unless the liability of the defendant is

17   established."  *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010);

18   *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Such a

19

20   _____

21   [10] The court notes that in cautioning against fail-safe classes, the *Olean Wholesale* Court
     departed from, without expressly addressing, murky Ninth Circuit case law regarding the
     permissibility of such classes.  *See Olean Wholesale*, 31 F.4th at 669 n.14; *see Melgar v. CSK*

22   *Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (noting "our circuit's case law appears to
     disapprove of the premise that a class can be fail-safe" (citing *Vizcaino*, 173 F.3d at 721-22)).

1  class definition is improper because a class member either wins or, by virtue of losing, is

2  defined out of the class and is therefore not bound by the judgment.").

3        Defendants argue that a class definition limited to prima facie eligible TPS

4  applicants is "the definition of a fail-safe class." (Resp. at 11.)  But Defendants again

5  conflate the merits of Plaintiffs' eligibility for temporary treatment benefits with the

6  merits of Plaintiffs' claims that Defendants' procedures for issuing such benefits are

7  unlawful.  (*See supra* § III.C.2-.3, .5.)  Here, it is not the case that "a class member either

8  wins or, by virtue of losing, is defined out of the class" because the class will win or lose

9  on the basis of the court's interpretation of Defendants' obligations to TPS applicants

10  under the statutory and regulatory scheme—not on the basis of each applicant's eligibility

11  for TPS. *See Messner*, 669 F.3d at 825.  In other words, the court could (but does not

12  now) issue a judgment against Plaintiffs and conclude that the TPS statute and

13  regulations do not entitle prima facie eligible TPS applicants to EADs at any particular

14  time; such a judgment would bind all class members. *See id*.  Therefore, Defendants do

15  not establish that the class is an impermissible fail-safe class.

16  **D.  Class Certification**

17        For the reasons articulated above, the court concludes that Plaintiffs have satisfied

18  the requirements of Rule 23(a) and 23(b)(2).  (*See supra* § III.C.)  Plaintiffs have

19  demonstrated that (1) members of the proposed class are so numerous that joinder is

20  impracticable; (2) the class presents a common contention capable of classwide

21  resolution; (3) Plaintiffs' claims are typical of the class; (4) Plaintiffs and their counsel

22  will fairly and adequately represent absent class members' interests; and (5) Plaintiffs

1    allege that Defendants have acted or refused to act on grounds that apply generally to the

2    class.  *See* Fed. Rule Civ. P. 23(a), (b)(2).  The court therefore certifies the following

3    class pursuant to Rule 23(b)(2):

> All individuals who have submitted or will submit an initial application establishing prima facie eligibility for Temporary Protected Status (TPS), who have not received a final decision on the TPS application, and who have not been issued employment authorization documentation incident to their pending TPS application.

7    The court appoints Plaintiffs Fayez Mansor, Cabdi Ibrahim Xareed, and Shukria Zafari as

8    class representatives, and attorneys Matt Adams, Aaron Korthius, and Glenda M. Aldana

9    Madrid of the Northwest Immigrant Rights Project, Marry Kenney, Trina Realmuto, and

10   Kristin Macleod-Ball of the National Immigration Litigation Alliance, and Ira J. Kurzban

11   and Edward F. Ramos of Kurzban Kurzban Tetzeli & Pratt, P.A., as class counsel.

## IV.    CONCLUSION

13   For the foregoing reasons, the court GRANTS in part Plaintiffs' motion (Dkt. # 2),

14   CERTIFIES the class as defined herein, and DIRECTS the Clerk to enter an order

15   regarding initial disclosures and a joint status report.

16   Dated this 25th day of August, 2023.

JAMES L. ROBART
United States District Judge