1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

FAYEZ MANSOR, et al.,

CASE NO. C23-0347JLR

11

Plaintiffs,

ORDER

v.

12

13

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,
et al.,

14

15

Defendants.

16

17

## I.    INTRODUCTION

18

Before the court are cross-motions for summary judgment filed by (1) named

19

Plaintiffs Fayez Mansor, Cabdi Ibrahim Xareed, and Shukria Zafari (collectively,

20

"Plaintiffs") (Pls. MSJ (Dkt. # 89); Pls. Reply (Dkt. # 96)); and (2) Defendants United

21

States Citizenship and Immigration Services ("USCIS"), Director of USCIS Joseph B.

22

Edlow, and United States Secretary of Homeland Security ("DHS") Kristi Noem

1  (collectively, "Defendants") (Defs. MSJ (Dkt. # 92); Defs. Reply (Dkt. # 95)).  Each

2  party opposes the other's motion.  (*See* Pls. Resp. (Dkt. # 93); Defs. Resp. (Dkt. # 94).)

3  The court has considered the motions, the parties' submissions in support of and in

4  opposition to the motions, the administrative record, and the applicable law.  Being fully

5  advised, the court GRANTS Plaintiffs' motion and DENIES Defendants' motion.

6  ## II.    BACKGROUND

7  The material background facts are undisputed by the parties.  Temporary Protected

8  Status ("TPS") is a form of humanitarian relief that provides lawful immigration status to

9  foreign nationals from countries experiencing emergent conditions.  8 U.S.C. § 1254a.

10  The TPS statute provides that, "in the case of [a noncitizen] who can establish a prima

11  facie case of eligibility for" TPS status, the noncitizen "shall be provided" authorization

12  to "engage in employment in the United States."  8 U.S.C. §§ 1254a(a)(1), (4).  The

13  parties agree that this statute unambiguously entitles a TPS applicant who is prima facie

14  eligible ("PFE") for TPS (i.e., a "PFE-TPS applicant") to an employment authorization

15  document ("EAD"), which constitutes evidence that the applicant is authorized to work in

16  the United States.  (*See, e.g.*, Pls. MSJ at 1-2; Defs. MSJ at 4-5.)  USCIS effectuates this

17  mandate by providing the (c)(19) category of temporary work authorization ("(c)(19)

18  EADs") to PFE-TPS applicants.  8 C.F.R. § 274a.12(c)(19).  In contrast, USCIS provides

19  the (a)(12) category of work authorization ("(a)(12) EADs") to noncitizens who have

20  been granted TPS after final merits review.  8 C.F.R. § 274a.12(a)(12).

21  Currently, USCIS in all instances subjects an applicant for a (c)(19) EAD to

22  multiple layers of security reviews before issuing a (c)(19) EAD.  (*See, e.g.*, 8/19/25 Not.

1    (Dkt. # 116) ¶¶ 5a, c.)  Specifically, USCIS searches for adverse information about the

2    (c)(19) EAD applicant that would render him ineligible for TPS and, thus, also ineligible

3    for a (c)(19) EAD.  (*See, e.g.*, Maltese Decl. (Dkt. # 90) ¶ 3, Ex. A) ("Massey Depo.") at

4    64-65, 108 (describing USCIS's search for adverse information).)  For certain (c)(19)

5    EAD applicants, USCIS policy explicitly directs adjudicators to determine the applicant's

6    eligibility for work authorization at the same time that they determine the final merits of

7    the individual's underlying TPS application.  (*See id.* at 61-62.)  As a result, USCIS does

8    not grant the vast majority of (c)(19) EAD applicants work authorization before their TPS

9    applications are fully adjudicated.  For example, for fiscal year ("FY") 2022, the last year

10   for which the parties provided robust USCIS (c)(19) EAD issuance data, USCIS initially

11   reported that it issued 72,086 (c)(19) EADs but later corrected the record to show USCIS

12   actually only issued 3,140 (c)(19) EADs.  (*See* Beveridge Decl. (Dkt. # 79-1) ¶¶ 6-7.)  Of

13   the 3,140 (c)(19) EADs USCIS issued in FY 2022, only 398 (c)(19) EADs were issued

14   prior to final TPS authorization.  (*See* Ramos Decl. (Dkt. # 91) ¶¶ 7-9.)

15       Plaintiffs seek to compel USCIS to issue (c)(19) EADs to PFE-TPS applicants

16   upon an initial finding that the applicant is prima facie eligible for TPS, rather than upon

17   final adjudication of the TPS application.  (*See generally* Compl. (Dkt. # 1).)  The

18   question now before the court is whether USCIS's adjudicatory process for (c)(19) EADs

19   violates the statutory, regulatory, and due process rights of PFE-TPS applicants.  The

20   court reviews the current statutory and regulatory structure governing the provision of

21   (c)(19) EADs, before turning to the factual and procedural background of this case.  The

22

1    court has previously detailed at length the background of this case, and, thus, recounts

2    only the information pertinent to the instant motions.  (*See* 8/2/23 Order (Dkt. # 51).)

3    **A.    Regulatory Structure**

4          The TPS statute limits the provision of employment authorization to those

5    applicants who "establish a prima facie case of eligibility [for TPS]."  8 U.S.C.

6    § 1254a(a)(4).  A noncitizen is eligible for TPS (1) if they have been "continuously

7    physically present in the United States since the effective date of the most recent

8    designation" of their native state; (2) if they have "continuously resided in the United

9    States" since the designation date; and (3) if they are "admissible as an immigrant."

10   8 U.S.C. § 1254a(c)(1)(A)(i)-(iii); (*see* Compl. ¶ 28 (describing this process)).  The TPS

11   statute requires that USCIS shall grant employment authorization to and shall not remove

12   from the United States any noncitizen who establishes PFE-TPS "until" USCIS makes a

13   final determination of their eligibility.  *See* 8 U.S.C. § 1254a(a)(4).

14         Prior to the creation of USCIS, legacy Immigration and Naturalization Services

15   ("INS") adopted regulations clarifying when and how an applicant establishes prima facie

16   eligibility.  The pertinent regulations define prima facie eligibility to mean "eligibility

17   established with the filing of a completed application for [TPS] containing factual

18   information that if unrebutted will establish a claim of eligibility[.]"  8 C.F.R. § 244.1;

19   (*cf.* Compl. ¶ 52 (confirming that, although USCIS issues a receipt acknowledging the

20   completed TPS application and begins processing it, the receipt does not include

21   employment authorization)).  Noncitizens apply for TPS using Form I-821 during the

22   registration period established by DHS and are considered PFE-TPS if the application

satisfies the requirements of 8 U.S.C. § 1254a(c)(1)(A).  (*See* Compl. ¶ 28 (describing this process).)

USCIS regulations similarly provide that PFE noncitizens awaiting final TPS adjudication are entitled to employment authorization "[u]pon the filing of an application for [TPS][.]"  8 C.F.R. § 244.5(b); *see also id*. § 244.10(e)(1) (defining temporary benefit entitlements to include EAD); *id*. § 244.13(a) (providing that temporary benefits, including employment authorization, terminate "upon a final determination with respect to the [applicant's] eligibility for [TPS].").  A TPS applicant applies for a (c)(19) EAD by submitting Form I-765 either concurrently with or separately from their TPS application.  (*See* Massey Depo. at 86-87 (comparing USCIS treatment of concurrently filed and separately filed (c)(19) EAD applications); *cf*. 8/19/25 Not. (setting forth USCIS policy under the Trump Administration changing the treatment of concurrently filed and separately filed (c)(19) EAD applications).)

USCIS currently uses two systems to adjudicate (c)(19) EAD applications.  (*See* Massey Depo. at 60-61; *see also* 8/19/25 Not.)  The first system is called Prima Facie Eligibility Streamlined Case Processing ("PFE-SCP") and is an umbrella system for processing applications for a variety of immigration benefits.  (Massey Depo. at 60; *see* 8/19/25 Not. (setting forth policy changes for both TPS and non-TPS applicants for immigration benefits).)  For TPS applicants specifically, this system is sometimes called TPS Prima Facie Eligibility Streamlined Case Processing ("TPS-PFE-SCP").  (*See, e.g.*, 8/19/25 Not. ¶ 3.)  PFE-SCP automates certain functions within the case management

1    system that were previously manual and includes mandatory background checks and

2    processing.[1]  (Maltese Decl. ¶ 4, Ex. B ("Defs. Am. ROG Resps.") at 7-9.)

3          The second system USCIS uses to adjudicate (c)(19) EAD applications is called

4    One-Touch Processing.  (*See* Massey Depo. at 61-62 (describing USCIS's "One-Touch"

5    approach); *see also* Defs. Am. ROG Resps. at 9 ("SCP differs from non-streamline case

6    processing . . . in that the former uses automation to initiate and perform certain pre-

7    processing checks before adjudication that used to be initiated manually or performed

8    manually.").)  Under the One-Touch system, USCIS directs adjudicators to "make an

9    initial assessment of the noncitizen's TPS application the first time they touch[] it" (Defs.

10   MSJ at 7; *see also* Massey Depo. at 61-62) and prioritize concurrently reviewing

11   eligibility for work authorization with a final merits adjudication for TPS (*see* Massey

12   Depo. at 62).

13         Before October 18, 2023, USCIS exclusively processed concurrently filed (c)(19)

14   EAD applications using the One-Touch process.  (Massey Depo at 60; *see* Defs. MSJ at

15   20 (asserting that USCIS introduced PFE-SCP at that time to automate many procedures

16   USCIS previously performed manually).)  Currently, the One-Touch system is only used

17   for separately filed (c)(19) EAD applications and for (c)(19) EAD applicants otherwise

18   ineligible for PFE-SCP processing.  (Massey Depo. at 87-88, 90; *see generally* 8/19/25

19

20         [1] PFE-SCP automates:  (a) A-number validation; (b) initial Treasury Enforcement
     Communication Systems ("TECS") check; (c) country of origin checks (i.e., verifying it is a TPS
21   designated country); (d) TPS application type check (i.e., initial v. re-registration); (e) address
     verification and resolution; (f) initial background checks; (g) names and alias checks; and
22   (h) IDENT checks (i.e., biometric identification of an individual using FBI fingerprint checks).
     (*Id*. at 7-8)

1   Not. (setting forth that citizens of certain countries are ineligible for PFE-SCP).)  Because

2   separately filed (c)(19) EAD applications undergo a manual review process and are

3   subject to the same background checks as concurrently filed (c)(19) EADs, they are

4   processed considerably slower than applications subject to the agency's automated

5   process.  (Massey Depo. at 90-91.)

6        In February 2025, following a series of executive orders issued by the newly

7   elected Trump Administration, Defendants paused the PFE-SCP workflow to review the

8   sufficiency of background checks and to ensure compliance with the orders.  (*See* 2/10/25

9   Not. (Dkt. # 97) at 2.)  Defendants subsequently provided notice of USCIS policy

10  changes affecting the provision of (c)(19) EADs, specifically that fewer countries are

11  eligible for PFE-SCP processing and fewer TPS-designated countries are eligible for

12  TPS-PFE-SCP processing.  (*See* 8/19/25 Not. ¶¶ 1-5 (describing changes for citizens of

13  specific countries).)  For applicants no longer eligible for PFE-SCP or TPS-PFE-SCP,

14  USCIS would return to manually processing (c)(19) EADs using the One-Touch system.

15  (*See, e.g.*, *id*. ¶ 5g.)  USCIS also identified several changes to the PFE-SCP system such

16  as increasing the number and substance of security reviews required for EAD and TPS

17  approval.[2]  (*See, e.g.*, *id*. ¶ 5.)

18

19

20

21  _____

    [2] The PFE-SCP process now includes two additional checks for all applicants, one that
22  "looks for evidence of a new arrest or other derogatory behavior[,]" and one that confirms "an
    applicant's entry(ies) into the United States to ensure TPS eligibility."  (*Id*. ¶¶ 5a, c.)

1    **B.    Factual and Procedural History**

2    Plaintiffs are noncitizens from countries designated for TPS who applied for TPS

3    and a (c)(19) EAD.  (*See* Compl. ¶¶ 15-18.)  Plaintiffs filed their class action complaint,

4    in which they seek declaratory and injunctive relief, on March 9, 2023.  (*See generally*

5    Compl.)  Plaintiffs assert claims under the Declaratory Judgment Act ("DJA"), the

6    Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause.

7    (*See id*. ¶¶ 105-25.)  On August 25, 2023, the court granted Plaintiffs' motion to certify

8    the class.  (8/25/23 Order (Dkt. # 59).)

9    On November 12, 2024, the parties submitted cross-motions for summary

10    judgment in which they briefed the issue of whether USCIS's adjudicatory process for

11    (c)(19) EADs violates the statutory, regulatory, and due process rights of PFE-TPS

12    applicants.  (Pls. MSJ at 1-2; Defs. MSJ at 1.)  After USCIS paused PFE-SCP to review

13    the "sufficiency of the background checks within the PFE SCP workflow and to ensure

14    compliance with" certain January 20, 2025 Executive Orders, the court stayed this matter

15    pending the completion of USCIS's review.  (*See* 2/10/25 Not. at 2; *see also* Status

16    Reports (Dkt. ## 102, 105, 108, 110, 113); Stay Orders (Dkt. ## 101, 104, 107, 109, 111,

17    114).)

18    On August 19, 2025, Defendants filed a notice of administrative action stating

19    that on or about August 13, 2025, USCIS informed Plaintiffs of policy and practice

20    updates regarding the PFE-SCP and TPS-PFE-SCP systems.  (*See* 8/19/25 Not. at 6.)  On

21    August 26, 2025, the parties filed a joint status report affirming that these changes did not

22    merit withdrawal of their cross-motions for summary judgment and proposing

1   supplemental briefing concerning the effects of the changes on their positions.  (8/26/25

2   Status Report (Dkt. # 118) at 2-3; *see also* 8/27/25 Order (Dkt. # 119) at 2-3 (ordering

3   supplemental memoranda explaining the effect of USCIS's changes on the parties'

4   cross-motions for summary judgment).)

5        In their supplemental briefing, Plaintiffs contend that Defendants' changes have

6   only created further delays in the issuance of (c)(19) work authorization under PFE-SCP;

7   that more applicants will be subject to One-Touch processing; and that class members

8   who are subject to enhanced vetting will likely be deprived of interim work authorization

9   altogether.  (Pls. Supp. (Dkt. # 121); Pls. Supp. Resp. (Dkt. # 124).)  Defendants argue

10  that USCIS's return to One-Touch processing for certain TPS applicants is lawful; that

11  USCIS's adoption of enhanced security screening measures and background checks is

12  consistent with its duty to consult independent evidence; and that USCIS issues EADs at

13  the earliest PFE determination, even if it adjudicates a (c)(19) EAD application

14  concurrently with the TPS final merits review.  (Defs. Supp. (Dkt. # 123); Defs. Supp.

15  Resp. (Dkt. # 125).)  The court now addresses the cross-motions for summary judgment.

16                        **III.   ANALYSIS**

17       The court first sets forth the legal standard for awarding summary judgment under

18  the APA and then turns to the parties' arguments in their cross-motions.

19  **A.   Legal Standard for Summary Judgment**

20       Summary judgment is appropriate when "'there is no genuine dispute as to any

21  material fact *and* the movant is entitled to judgment as a matter of law.'"  *Dupree v.*

22  *Younger*, 598 U.S. 729, 737 (2023) (emphasis in original) (quoting Fed. R. Civ. P. 56(a)).

1    Agency decisions under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et*

2    *seq*., are reviewed under the APA.  *See ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890-91 (9th

3    Cir. 2004), abrogated on other grounds by *Bouarfa v. Mayorkas*, 604 U.S. 6, 14-15

4    (2024), (discussing that the general rule that agency actions are reviewable under the

5    APA applies in the immigration context to USCIS decisions).  Under the APA, the court

6    must set aside USCIS action "if it is 'arbitrary, capricious, an abuse of discretion, or

7    otherwise not in accordance with law.'"  *Kazarian v. U.S. Citizenship & Immigr. Servs.*,

8    596 F.3d 1115, 1118 (9th Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)).  "[T]he agency must

9    examine the relevant data and articulate a satisfactory explanation for its action including

10   a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle*

11   *Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

12   U.S. 29, 43 (1983) (citation omitted).

13         Plaintiffs attack as arbitrary and capricious Defendants' rule for issuing (c)(19)

14   EADs.  (Compl. ¶ 114.)  In determining whether an agency's decision was arbitrary or

15   capricious, the reviewing court "must consider whether the decision was based on a

16   consideration of the relevant factors and whether there has been a clear error of

17   judgment."  *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) (affirming that

18   the purpose of judicial review is to "ensure that agency decisions are founded on a

19   reasoned evaluation 'of the relevant factors.'").  Normally, an agency rule would be

20   arbitrary and capricious, and thus stricken down, "if the agency has relied on factors

21   which Congress has not intended it to consider, entirely failed to consider an important

22   aspect of the problem, offered an explanation for its decision that runs counter to the

1    evidence before the agency, or if the agency's decision is so implausible that it could not

2    be ascribed to a difference in view or the product of agency expertise." *All. for the Wild*

3    *Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018) (citing *Turtle*

4    *Island Restoration Network v. United States Dep't of Com.*, 878 F.3d 725, 732-33 (9th

5    Cir. 2017)) (internal quotation marks and citation omitted).

6         The court's review is limited to the plain meaning of the TPS statute, its

7    implementing regulations, and "the administrative record already in existence[.]" *Camp*

8    *v. Pitts*, 411 U.S. 138, 142 (1973); *see also Reeb v. Thomas*, 636 F.3d 1224, 1226-27 (9th

9    Cir. 2011) ("When the words of a statute are unambiguous 'judicial inquiry is

10   complete.'").  "If the statute's meaning is plain, [the court] need not defer to the

11   [agency's] interpretation." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir.

12   2021) (citing *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir.

13   2001) ("No deference is due to the agency's interpretation unless [the court] finds that the

14   plain meaning of the statute's language is ambiguous with regard to the precise matter at

15   issue.") (citation omitted)).

16   **B.    The court grants summary judgment for Plaintiffs.**

17        The court first considers the parties' arguments pertaining to the statutory and

18   regulatory rights at issue and then turns to arguments regarding due process rights.

19        1.  <u>(c)(19) EAD Applicants' Statutory and Regulatory Rights</u>

20        Defendants assert that "the sole question before this [c]ourt is whether USCIS may

21   consult the independent evidence in its possession" to refute a (c)(19) EAD applicant's

22   claims of eligibility for work authorization, (Defs. Supp. Resp. at 1), and contend that the

1    court must defer to USCIS's interpretation of legacy INS' regulatory scheme to resolve

2    the dispute (Defs. Supp. at 4-6; *see also* Defs. MSJ at 15 (providing that INS rejected a

3    final rule that would permit a TPS applicant to establish eligibility by "merely" filing a

4    completed TPS application).)  The court, however, rejects both Defendants' framing of

5    the policy at issue and interpretation of the governing law and finds that USCIS's current

6    approach to the provision of (c)(19) EADs is arbitrary and capricious and, thus, runs

7    contrary to the APA.  That USCIS may consult information in its possession when

8    determining whether an individual is eligible for a (c)(19) EAD is not a matter in dispute.

9    (*See generally* Pls. MSJ; Defs. Supp. at 5.)  Instead, the operative question is whether, for

10   purposes of agency efficiency, the APA permits USCIS to hold such applications in

11   processing while it actively *searches* for adverse information to refute an applicant's

12   claim of eligibility for work authorization.  The court concludes the APA does not permit

13   such agency action and, because the TPS statute is not ambiguous, the court is subject to

14   no obligation to defer to the agency's contradictory interpretation of the law.  *See*

15   *Thomas*, 993 F.3d at 1208 ("If the statute's meaning is plain, [the court] need not defer to

16   the [agency's] interpretation.").  In reaching this conclusion, the court finds that USCIS

17   has relied on factors which Congress has not intended it to consider, entirely failed to

18   consider an important aspect of the problem, and offered an explanation for its decision

19   that is so implausible that it could not be ascribed to a difference in view or the product of

20   agency expertise.  *See State Farm*, 463 U.S. at 43 ([T]he agency must examine the

21   relevant data and articulate a satisfactory explanation for its action including a 'rationale

22   connection between the facts found and the choice made.'").

1    First, USCIS fails to establish that Congress intended for the agency to consider

2    information outside the initial TPS application that it does not already possess when it

3    decides whether to issue a (c)(19) EAD.  As a threshold matter, neither party argues that

4    the TPS statute is ambiguous.  (*See generally* Pls. MSJ; Defs. MSJ.)  Rather, the parties

5    agree that (1) the TPS statute sets forth that USCIS must provide evidence of work

6    authorization to eligible noncitizens, and (2) the TPS statute provides the criteria the

7    agency must use to decide whether to issue such evidence.  (*See, e.g.*, Pls. MSJ at 2-3;

8    Defs. MSJ at 4); 8 U.S.C. § 1254a(c)(1)(A) (setting forth the requirements for an

9    individual to establish that he is PFE-TPS and thus entitled to work authorization and

10    protection from removal).

11    Plaintiffs argue that 8 U.S.C. § 1254a(c)(1)(A) sets forth the complete

12    requirements for a TPS applicant to "establish[] a prima facie case" for TPS as required

13    by 8 U.S.C. § 1254a(a)(4)(B).  (Pls. MSJ at 11-12.)  Defendants counter that "nothing in

14    the TPS statute . . . require[s] USCIS to accept a completed TPS application as sole

15    evidence of prima facie eligibility[,]" (Defs. MSJ at 16), and that the results of security

16    reviews inform an applicant's status as "admissible as an immigrant" pursuant to

17    8 U.S.C. §1254a(c)(1)(A)(iii), (Defs. Supp. at 4).  The court agrees with Plaintiffs and

18    concludes that the TPS statute unambiguously sets forth the *complete* requirements for an

19    individual "to establish[] a prima facie case" for TPS and, thus, qualify for evidence of

20    work authorization and protection from removal.  8 U.S.C. § 1254a(a)(4)(B).  Because

21    "the words of  [the TPS] statute are unambiguous" about the nature of the benefits and

22    the requirements to obtain them, the court's "'judicial inquiry is complete.'"  *Reeb*, 636

F.3d at 1226-27; *see also Royal Foods Co.*, 252 F.3d at 1106 ("No deference is due to the

agency's interpretation unless [the court] finds that the plain meaning of the statute's

language is ambiguous with regard to the precise matter at issue.").

Second, the court finds that the agency has failed to consider an important part of

the problem.  Plaintiffs do not dispute that the TPS statute, 8 U.S.C. §1254a(c)(1)(A)(iii),

requires that a (c)(19) EAD applicant establish a PFE case that they are "admissible as an

immigrant" to receive evidence of work authorization.  (*See generally* Pls. MSJ.)  Rather,

Plaintiffs assert only that an applicant can establish such a case before the agency has

concluded the research needed for a TPS final merits review.  (*See* Pls. MSJ at 15-16.)

To illustrate this point, Plaintiffs assert, and Defendants do not contest, that, because the

agency is required to provide such evidence of work authorization to eligible applicants

"until a final determination" of the merits of the individual's TPS application, the TPS

statute sets forth that the provision of (c)(19) EADs is interim in nature.  (Pls. MSJ at 11-

13; Defs. Supp. at 8 (discussing the agency's provision of "temporary treatment

benefits")); 8 U.S.C. § 1254a(a)(4)(B); *see K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281,

291 (1988) (providing that in determining the plain meaning of the statute, a court must

consider both the statutory language at issue and "the language and design of the statute

as a whole.").  Although the parties agree that the TPS statute does not impose an explicit

deadline on USCIS to effectuate these temporary benefits, (Pls. MSJ at 14-15, 17-18;

Defs. Supp. at 3-5), Plaintiffs assert that the question of *when* to provide work

authorization is not entirely discretionary (Pls. MSJ at 14-15 (citing 8 U.S.C.

§ 1254a(a)(4)(B))); *see K Mart Corp.*, 486 U.S. at 291 ("In ascertaining the plain

1    meaning of the statute, the court must look to the particular statutory language at issue, as

2    well as the language and design of the statute as a whole.").  The court agrees with

3    Plaintiffs and concludes that the TPS statute requires that interim work authorization

4    must be provided to (c)(19) EAD applicants upon a showing of eligibility in a completed

5    application and prior to the agency concluding the security reviews needed for a TPS

6    final merits review.

7          Here, the TPS statute creates no obvious contradictions.  It follows that an

8    applicant may be both eligible for interim evidence of work authorization, and later,

9    following a full merits review, found ineligible for TPS, and thus ineligible for continued

10   work authorization.  The TPS statute sets forth two benefits for PFE-TPS applicants –

11   protection from removal from the United States and evidence of work authorization.

12   8 U.S.C. § 1254a(a)(1)(A).  To conclude that Defendants' policy is arbitrary and

13   capricious, the court need look no further than the fact that USCIS freely grants PFE-TPS

14   applicants protection from removal and requires no additional evidence that the TPS

15   applicant is admissible as an immigrant.  (Defs. Supp. at 4-6.)  Defendants do not explain

16   why the two benefits should be treated differently.  (*See generally* Defs. MSJ.)

17         Third, the agency's approach to provision of (c)(19) EADs violates its own

18   regulations.  *See* 8 C.F.R. § 244.5 (providing that noncitizens who demonstrate PFE for

19   TPS are entitled to employment authorization "[u]pon the filing of an application for

20   [TPS]"); *id*. § 244.1 (defining key terms used in the TPS statute, including prima facie

21   eligibilty).  Defendants contend that the words "if unrebutted" in 8 C.F.R. § 244.1

22   permits the agency to use "independent evidence," such as information about an

1    applicant's criminal history, to deny applications for (c)(19) EADs.  (*See, e.g.*, Defs. MSJ

2    at 5-6, 14-15.)  The court again disagrees that the agency's interpretation of its

3    regulations justifies holding (c)(19) EAD applications in processing while it searches for

4    adverse information.  (c)(19) EAD applicants are able to demonstrate their qualifications

5    for work authorization *before* USCIS completes its search for adverse information, but

6    are properly denied if, at the time of submitting an application for TPS, USCIS has in its

7    possession evidence that rebuts an applicant's claims of eligibility.  Defendants' current

8    practice, which conflates eligibility for an interim benefit with a final merits review,

9    represents a clear error in judgment and, as such, the agency is not entitled to judicial

10   deference.  *Marsh*, 490 U.S. at 378 (affirming that an agency is not entitled to deference

11   when a decision reflects a "clear error in judgment.").

12          The agency's administrative record further demonstrates that, as a result of this

13   policy, USCIS issues relatively few (c)(19) EADs compared to the number of qualified

14   applicants, and almost exclusively issues (a)(12) EADs.  (*See* Ramos Decl. ¶¶ 7-13

15   (showing that, for FY 2022, USCIS issued 3,140 (c)(19) EADs and, for over 87% of

16   them, USCIS approved the (c)(19) EAD on the same day as, or after, the associated TPS

17   application).)  These delays are likely more acute following recent USCIS policy changes

18   in which the agency added additional required background checks to the adjudication

19   process and subjects more applicants to One-Touch processing.  (*See generally* 8/19/25

20   Not.)

21          Finally, Defendants offer an explanation for its approach to the provision of

22   (c)(19) EADs that cannot be ascribed to a difference in view or the product of agency

1    expertise.  USCIS does not argue that its policy is the result of agency expertise.  (*See*

2    *generally* Defs. MSJ.)  Rather, Plaintiffs assert, USCIS promotes efficiency at the

3    expense of its statutory mandate by intentionally bypassing PFE review for work

4    authorization in favor of concurrent final determination of the TPS application merits.

5    (Pls. MSJ at 14-15; *see, e.g.*, Defs. Am. ROG Resps. at 20-21 (stating that USCIS

6    reviews (c)(19) EAD applications concurrently with TPS application whenever possible

7    for "operational efficiency.").)

8        USCIS's basis for this model of efficiency is noticeably absent from its briefing.

9    (*See* Defs. MSJ.)  When rationale deficiencies exist, the court may not make up for them

10   by supplying "a reasoned basis for the agency's action that the agency itself has not

11   given."  *State Farm*, 463 U.S. at 43.

12       Furthermore, an agency's claims of "efficiency" are insufficient to excuse

13   near-total neglect of a statutory mandate.  *See E. Bay Sanctuary Covenant v. Trump*, 932

14   F.3d 742, 774 (9th Cir. 2018) ("'The power of executing the laws . . . does not include a

15   power to revise clear statutory terms that turn out not to work in practice,' and it is thus a

16   'core administrative-law principle that an agency may not rewrite clear statutory terms to

17   suit its own sense of how the statute should operate.'") (citing *Util. Air Regul. Grp. v.*

18   *E.P.A.*, 573 U.S. 302, 327-28 (2014); *id.* (asserting that where "'Congress itself has

19   significantly limited executive discretion by establishing a detailed scheme that the

20   [executive branch] must follow in [dealing with] aliens,'" the executive branch may not

21   abandon the scheme because it believes the policy is not working well) (citing *Jama v.*

22   *Immigr. & Customs Enf't*, 543 U.S. 335, 368 (2005)); *Cmty. Legal Servs. in E. Palo Alto*

1    *v. United States Dep't of Health and Hum. Servs.*, 137 F.4th 932, 941 (9th Cir. 2025)

2    (affirming that even if an agency had discretion to provide certain statutorily mandated

3    benefits "to the greatest extent practicable[,]" adopting a rule to provide such benefits "to

4    no extent at all" would violate the APA) (citation omitted)); *Wagafe v. Biden*, 764 F.

5    Supp. 3d 980, 1014-15 (W.D. Wash 2025) (finding that USCIS implemented in an

6    arbitrary and capricious manner a statute requiring the agency to adjudicate naturalization

7    applications within a reasonable time because USCIS failed to explain its basis for

8    implementing its policy, failed to provide a sufficient argument for agency expertise, and

9    failed to consider an important aspect of its statutory mandate, namely its "timeliness

10   mandate").

11        Therefore, for the reasons outlined above, the court concludes USCIS's policy and

12   practice regarding provision of (c)(19) EADs is arbitrary and capricious and violates the

13   statutory and regulatory rights of class members.

14        2.   (c)(19) EAD Applicants' Due Process Rights

15        Defendants' failure to provide interim employment authorization also violates the

16   due process rights of Plaintiffs and class members.  The court agrees with Plaintiffs that

17   USCIS has failed to meet its mandate to implement a process or procedure that provides

18   Plaintiffs with evidence of interim employment authorization.  (Pls. MSJ at 17-18); *see*

19   *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991) (affirming programs

20   relating to "the opportunity to obtain gainful employment [are] plainly sufficient to

21   mandate constitutionally fair procedures[.]").  This court previously recognized that

22   Plaintiffs have "a property interest in temporary employment authorization subject to due

1  process protections." (8/2/23 Order at 20.) Contrary to their statutory mandate,

2  Defendants acknowledge that their policy is to forgo review of qualifications for interim

3  benefits in favor of final merits adjudication and argue that because there is no

4  substantive difference between interim work authorization and final work authorization,

5  their approach to implementing the TPS statute is lawful. (Defs. MSJ at 20.) The court

6  again disagrees with Defendants. Both the TPS statute and USCIS regulations speak to

7  the minimum requirements for Plaintiffs to demonstrate that they are entitled to interim

8  work authorization, *see* 8 U.S.C § 1254a(a)(4)(B), 8 C.F.R. § 244.5(b), and agencies are

9  required to comply with their own regulations, *see Ramon-Sepulveda v. I.N.S.*, 743 F.2d

10  1307, 1310 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with

11  their own regulations."). Under both One-Touch processing and the PFE-SCP system,

12  Defendants have failed to provide Plaintiffs and qualified class members with evidence of

13  interim employment authorization "[u]pon the filing of an application for [TPS][.]"

14  8 C.F.R. § 244.5(b). Accordingly, the court concludes that Defendants' practices and

15  policies violate Plaintiffs' due process rights.

16  **C.    Declaratory Relief**

17      The court first considers the legal standard for declaratory relief before turning to

18  Plaintiffs' request for declaratory and injunctive relief.

19      1.    Legal Standard

20      "The purpose of a declaratory judgment is to clarify in an expeditious manner the

21  'rights, liabilities, and other legal relationships' between adverse parties. Declaratory

22  relief is remedial but, . . . it resolves disputes without creating additional substantive

1    rights or duties between the parties." *Bethel Native Corp. v. Dep't of Interior*, 208 F.3d

2    1171, 1176 (9th Cir. 2000) (citation omitted).  Declaratory relief is appropriate "(1) when

3    the judgment will serve a useful purpose in clarifying and settling the legal relations in

4    issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and

5    controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462,

6    1470 (9th Cir. 1984) (citation omitted).

7        A party may obtain a declaratory judgment through a motion for summary

8    judgment.  *See* Fed. R. Civ. P. 56(a); *see also* 28 U.S.C. § 2201 (authorizing district

9    courts to "declare the rights and other legal relations of any interested party seeking such

10   declaration"); *State Farm Mut. Auto. Ins. Co. v. Kolb*, 884 F.2d 486, 490 (9th Cir. 1989)

11   (affirming grant of summary judgment in declaratory judgment action).  When there is no

12   genuine dispute of material fact and the movant is entitled to judgment as a matter of law,

13   summary judgment is appropriate.  *Dupree*, 598 U.S. at 737.

14       2.    <u>Declaratory Relief is Appropriate and Warranted.</u>

15       Plaintiffs have shown that they are entitled to summary judgment on their claim

16   for declaratory relief.  As the court explained above, there is no genuine dispute as to any

17   material fact and the movants are entitled to judgment as a matter of law.  *Dupree*, 598

18   U.S. at 737.  Furthermore, the two-part test for awarding declaratory relief is met here.

19   First, the court agrees with Plaintiffs that the judgment will serve a useful purpose by

20   clarifying and settling that eligible Plaintiffs and class members are entitled to (c)(19)

21   EADs while their applications for TPS are pending, and that USCIS is required to

22   effectuate a process to meet this obligation.  (*See* Pls. MSJ at 18-19); *Bilbrey by Bilbrey,*

738 F.2d at 1470.  Second, the court also agrees that such relief will provide class

members "relief from the uncertainty, insecurity, and controversy" that gave rise to this

suit.  (Pls. MSJ at 19); *Bilbrey by Bilbrey,* 738 F.2d at 1470.  Therefore, the court

concludes declaratory relief in favor of Plaintiffs is appropriate and warranted.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion for summary

judgment (Dkt. # 89) and DENIES Defendants' motion for summary judgment (Dkt.

# 92).

Accordingly, the court ORDERS as follows:

(1) The court DECLARES that Defendants' One-Touch policy and practice
    violates 8 U.S.C. § 1254a(a)(4) by failing to provide the temporary treatment
    benefit of interim employment authorization.  Defendants' policy and practice
    of adjudicating applications for employment authorization and TPS
    simultaneously is unlawful and violates 5 U.S.C. §§ 706(1), (2) and the Due
    Process Clause of the Fifth Amendment.

(2) The court DECLARES that Defendants' PFE-SCP violates 8 U.S.C.
    § 1254a(a)(4), its implementing regulations, 5 U.S.C. §§ 706(1), (2), and the
    Due Process Clause of the Fifth Amendment by failing to timely provide the
    temporary treatment benefit of interim employment authorization following the
    filing of a TPS application demonstrating prima facie eligibility.

(3) Pursuant to 5 U.S.C. § 706(1), the court DECLARES that the TPS statute and
    its implementing regulations mandate that Defendants must provide interim

1    employment authorization upon the filing of a TPS application demonstrating

2    prima facie eligibility; that pursuant to its policies and practices Defendants

3    have unlawfully withheld this mandatory interim benefit; and that, by this

4    Order, Defendants are compelled to timely provide interim employment

5    authorization upon the filing of a TPS application that demonstrates prima

6    facie eligibility.

7    (4) Pursuant to 5 U.S.C. § 706(2), the court sets aside and ENJOINS Defendants

8    from using its One-Touch policy and PFE-SCP processing.  The court finds

9    that the policies are arbitrary and capricious, not in accordance with law,

10    contrary to constitutional right, short of statutory right, and without observance

11    of procedure required by law.  The court also finds that the policies violate the

12    Due Process Clause of the Fifth Amendment.

13    (5) The court ORDERS Defendants to implement a process to screen TPS

14    applicants for prima facie eligibility upon the filing of a TPS application and to

15    provide (c)(19) EADs to all such eligible applicants as defined by

16    8 U.S.C.§ 1254a(c)(1)(A)(i)-(iii) and 8 C.F.R. § 244.1, and as otherwise

17    required by the TPS statute and its implementing regulations.

18    (6) The court ORDERS Defendants to submit a status report every six (6) months

19    regarding the rate of compliance with the mandate for temporary treatment

20    benefits.

21    (7) The court DIRECTS the clerk to provisionally file this order under seal and

22    ORDERS the parties to meet and confer regarding the need for redaction.  The

court further ORDERS the parties to jointly file a statement within ten (10)

days of the date of this order to indicate any need for redaction.


Dated this 1st day of December, 2025.

                                        _____
                                        JAMES L. ROBART
                                        United States District Judge

ORDER - 23